NOVA HORIZON, INC., a Nevada Corporation, and NOVA INVEST, a Nevada Corporation, Appellants, v. THE CITY COUNCIL OF THE CITY OF RENO and the Members Thereof, Consisting of PETE SFERRAZZA, RICHARD SCOTT, JANICE PINE, FLORENCE LEHNERS, JAMES THORNTON, DAVE HOWARD and GUS NUNEZ, Respondents.

No. 16555

February 28, 1989          769 P.2d 721

[Rehearing denied July 7, 1989]

*James W. Hardesty,* Reno, for Appellants.

*Robert L. Van Wagoner,* City Attorney, *John R. McGlamery,* Assistant City Attorney, Reno, for Respondents.

---

[18]The Hon. Robert E. Rose, Justice, did not participate in the decision of this appeal.

## OPINION

*Per Curiam:*[1]

Appellants are developers who planned to build a hotel/convention center (the Project) on land next to the Bally Grand in Reno. Prior to submitting an application for necessary approvals, appellants purchased the land in question. The plot consists of 2.9 acres, bordered on three sides by the Bally Grand. On August 29, 1984, appellants submitted to the Reno Planning Commission an application requesting:

1. a change of zoning, M-1 to C-3;
2. a Special Use Permit; and
3. acceptance of a tentative subdivision map,

to construct a twenty-eight story, 804-room hotel and casino. At that time, the property owned by appellants was zoned M-1 as defined and limited in Section 18.06.270 of the Reno Municipal Code. M-1 zoning allows commercial development but imposes height restrictions of sixty-five feet, which would not accommodate appellants' project as planned. Additionally, M-1 does not allow any residential use and the proposed project was planned to include the sale of 312 units on a time-share basis.

On November 7, 1984, the Reno Planning Commission, by a vote of four to three, recommended to the City Council that it approve the three separate requests. Appellants' application came before respondents on December 10, 1984. At that time, a public hearing was held wherein appellants presented their case and the community was given the opportunity to respond. After the conclusion of testimony, the City Council unanimously voted to deny all of appellants' requests.

On December 24, 1984, the Reno City Attorney presented to

[1]THE HONORABLE ROBERT E. ROSE, Justice, did not participate in the decision of this appeal.

respondents a document entitled "Findings and Conclusions." This document consisted of a list of post-hearing considerations developed by the City Attorney and presented to respondents. This document was read into the minutes of the Reno City Council, which approved and adopted it. Thereafter, appellants filed a petition for a writ of mandamus with the district court. An order for issuance of an alternative writ was issued on January 2, 1985. Appellants also filed a motion in limine in an attempt to preclude the use of the document entitled "Findings and Conclusions."

After a hearing on appellants' petition, the district court denied both appellants' motion in limine and their petition for writ of mandamus. In its decision, the court concluded as a matter of law that there was substantial evidence supporting respondents' denial of the zone change, the special use permit, and acceptance of the subdivision map. The district court also held that the City's land use/transportation guide was nothing more than a guide and could not be construed to compel a change in the zoning of property.

We note, preliminarily, that the district court properly subjected the City's action to a substantial evidence standard of review. This court, in addressing the propriety of a district court ruling reversing a zone change approval by the appropriate governmental body, declared:

> Respondents recognize the general rule that a court is not empowered to substitute its judgment for that of a zoning board, in this case the board of county commissioners, when the board's action is supported by substantial evidence.
>
> * * *
>
> The lower court had before it the same evidence as the board. Its function was not to conduct a trial de novo, but only to ascertain as a matter of law if there was any substantial evidence before the board which would sustain the board's action. The function of this court at this time is the same as that of the lower court. [Citation omitted.]
>
> * * *
>
> Under the police power, zoning is a matter within sound legislative action and such legislative action must be upheld if the facts do not show that the bounds of that discretion have been exceeded.

McKenzie v. Shelly, 77 Nev. 237, 240-242, 362 P.2d 268, 269-70 (1961). In *Shelly,* we reversed the district court since the presumptive validity of the board's action was supported by substantial evidence and there was no showing that the board abused its discretion.

Numerous cases support the premise that zoning boards may not unreasonably or arbitrarily deprive property owners of legitimate, advantageous land uses. For example, the Supreme Court of Virginia affirmed a trial court decision holding an unduly restrictive zoning classification void. Town of Vienna Council v. Kohler, 244 S.E.2d 542 (1978). The *Kohler* court concluded that "a denial of a rezoning request will not be sustained if under all the facts of the particular case, the denial is unreasonable, or is discriminatory, or is without substantial relationship to the public health, safety, morals and general welfare." *Id.* at 548. *See also,* e.g., Raabe v. City of Walker, 174 N.W.2d 789 (Mich. 1970) (invalidating rezoning of small enclave in midst of residential area to accommodate an industrial park); City of Conway v. Housing Authority, 584 S.W.2d 10 (Ark. 1979) (City of Conway directed to rezone property, as the denial of the rezoning request was arbitrary and inconsistent with surrounding zoning); Lorve v. City of Missoula, 525 P.2d 551 (Mont. 1974) (restrictive zoning impressed on landowner's property was so lacking in fact information as to constitute an abuse of discretion; rezoning held to be invalid). In the latter case, the Montana Supreme Court, quoting from an earlier case, stated:

> Under the guise of protecting the public or advancing its interest, the state may not unduly interfere with private business or prohibit lawful occupations, or impose unreasonable or unnecessary restrictions upon them. Any law or regulation which imposes unjust limitations upon the full use and enjoyment of property, or destroys property value or use, deprives the owner of property rights.

In the instant case, the requested change in zoning was in conformity with the long-range development plans adopted by the City of Reno. The zone change was requested at the suggestion of the Reno City Planning staff and is consistent with the zoning of the surrounding property. Moreover, it appears that appellants may have invested substantial sums of money (allegedly over $1,200,000.00) in land acquisition and project development costs in anticipation of the City's approval of their application.

At the public hearing in which appellants' application was considered, only one person presented opposition to the project and his objections were basically rebuffed by members of the Reno City Council. Nevertheless, the Council unanimously denied approval to what was described as an architecturally "superior" project on the specified grounds that approval would violate a campaign promise against locating new casinos outside the "downtown area" and a similar pledge to diversification that would pay higher employee wages.

In determining whether the action of the Council concerning

the zone change was without substantial evidentiary support and, consequently, an abuse of discretion, it is essential to first consider the effect of the City's master plan, as amended, and land use/transportation guide on the Council's latitude in zoning matters.

Chapter 278 of the Nevada Revised Statutes governs many aspects of planning and zoning. It not only provides for the formation and compensation of planning commissions and the adoption of master plans, it also provides for zoning in accordance with an adopted master plan. NRS 278.250(2) provides, in pertinent part: "2. The zoning regulations shall be adopted in accordance with the master plan for land use. . . ." (Emphasis supplied.) This suggests that municipal entities must adopt zoning regulations that are in substantial agreement with the master plan, including a land-use guide if one is also adopted by the city council. Other jurisdictions have construed their statutes as requiring strict conformity between master plans and zoning ordinances, even to the point of requiring changes in zoning after a modification in a master plan. See Baker v. City of Milwaukee, 533 P.2d 772 (Or. 1975); Fasano v. Board of County Comm'rs, 507 P.2d 23 (Or. 1973). While such a strict view of the invariable application of a master plan on zoning matters may lend a high degree of predictability to prospective land uses and facilitate usage planning by land owners, we do not perceive the legislative intent to be so confining and inflexible. We therefore choose to view a master plan as a standard that commands deference and a presumption of applicability, rather than a legislative straight-jacket from which no leave may be taken. In pertinent part, the Montana Supreme Court analyzed the issue as follows:

> To require strict compliance with the master plan would result in a master plan so unworkable that it would have to be constantly changed to comply with the realities. The master plan is, after all, a plan. On the other hand, to require no compliance at all would defeat the whole idea of planning. Why have a plan if the local government units are free to ignore it at any time? The statutes are clear enough to send the message that in reaching zoning decisions, the local governmental unit should at least substantially comply with the comprehensive plan (or master plan).

Little v. Board of County Comm'rs, 631 P.2d 1282, 1293 (Mont. 1981).

Having determined that master plans are to be accorded substantial compliance under Nevada's statutory scheme, and recog-

nizing anew the general reluctance to judicially intervene in zoning determinations absent clear necessity, Board of Comm'rs v. Dayton Dev. Co., 91 Nev. 71, 530 P.2d 1187 (1975), we turn now to the issue of respondents' zoning action in the instant case. It is clear on the record that no evidentiary basis exists for the Council's denial of appellants' zone change request. It is equally clear that no deference, let alone a presumptive applicability, was accorded Reno's master plan by the Council. In one instance, an expression of deference to a campaign promise was the stated basis for what was tantamount to a disregard for the master plan. The other expression offered as a specific basis for rejecting appellants' application was a pledge, presumably to constituents, to seek diversification in favor of higher employee wages. The latter point was equally untenable as a basis for zoning denial. Moreover, as noted above, the surrounding properties enjoyed the same zoning sought by appellants and no evidence, let alone reasoning, was presented to justify a denial of appellants' request for rezoning. We therefore are compelled to reverse the district court on this point.

We are not constrained to grant similar relief concerning appellants' request for a special use permit and acceptance of a tentative subdivision map. While the record provides no existing or prospective basis for denying the zone change, we are loathe to direct authorization for a project that may or may not be deserving of the Council's approval. The Council simply did not effectively address the effect of the impact of such a substantial project on the City of Reno. While it may be argued with considerable cogency from the record that appellants justified an approval of their entire application, and that it is unfair to subject them to further proceedings, we nevertheless conclude that it would be unwise and inappropriate for this court to accommodate an approval by forfeiture.

If appellants remain interested in the construction of their project, we will assume that, upon rehearing, the Council will exercise its judgment fairly and in accordance with the merits as reflected by the evidence and deliberations of record.

We realize that our ruling may appear to be inconsistent with our opinion in City Council, Reno v. Travelers Hotel, 100 Nev. 436, 683 P.2d 960 (1984), where we affirmed the issuance of a peremptory writ of mandamus requiring approval of a special use permit for a hotel-casino. In that case, however, rezoning was not an issue and the Council was able to focus directly on the project itself. Here, the only specified basis for rejecting appellants' application was essentially the project's location outside the downtown area, a reason which, if implemented, would constitute an inappropriate *de facto* amendment to the City's master

plan and land use/transportation guide. We are simply unable to discern from the record that the Council adequately focused its attention on the merits of the project and its total impact on the community. Considerations of public health, safety and welfare demand both such a focused attention and the exercise of a fair and enlightened discretion by the Council based upon substantial evidence.

The judgment of the district court is reversed insofar as the zone change is concerned, and remanded with instructions to issue a peremptory writ of mandamus requiring respondents to grant appellants' application for zone change. The district court shall also modify its judgment to the extent of requiring respondents, upon application by appellants, to entertain anew the merits of appellants' application for special use permit and acceptance of tentative subdivision map, all in accordance with this opinion.

Steffen, Springer, and Mowbray, JJ., and Mendoza, D. J.,[2] concur.

---

[2]The Honorable John F. Mendoza, Judge of the Eighth Judicial District, was designated by the Governor to sit in the place of The Honorable Cliff Young, Chief Justice, who voluntarily recused himself. Nev. Const., art. 6, § 4.