AMERICAN WEST DEVELOPMENT, INC., a Nevada Corporation, Appellant, v. CITY OF HENDERSON, a Political Subdivision of the State of Nevada and the CITY COUNCIL Thereof, Respondents.

No. 25621

June 27, 1995                    898 P.2d 110

*Prezant, Mollath & Costello,* Reno, for Appellant.

*Shauna Hughes,* City Attorney, Henderson; *Deaner, Deaner, Scann, Curtis & Malan,* Las Vegas, for Respondents.

## OPINION

*Per Curiam:*

### FACTS

In 1989, appellant American West Development, Inc., ("AWD") submitted to respondent City of Henderson ("Henderson") a revised master plan for future development of the Whitney Ranch community ("the community"). The revised plan provided for multi-family dwellings on 111 acres of undevel-

oped property adjacent to the original 412-acre community, and on portions of the community reflected in the 1987 master plan. Henderson approved the revised plan, with certain reservations, including the right to determine the final density designation under Chapters 18 and 19 of the new Henderson Municipal Code (the "new code"), which was to be adopted later that same year.

Between 1989 and 1992, Henderson issued various zone changes and building permits for the development of portions of the original 412 acres, as AWD proceeded to develop the community based upon the approved, revised 1989 master plan. No development occurred with respect to the 111 acres, however, except for the construction of some on-site improvements (roads) in anticipation of future development under the 1989 master plan.

In 1992, AWD sought specific zoning for the construction of the multi-family units reflected in the 1989 master plan, but Henderson refused to consider the zoning application until AWD submitted the equivalent of a new master plan ("MP Master Development Plan Overlay District"), pursuant to HMC 19.44 of the new code. However, AWD was convinced that Henderson's request for a new master plan was spawned by political pressure to abolish the multi-family designation for the 111 acres. AWD therefore refused to submit a new master plan and claimed vested rights in the 1989 master plan based upon its reliance thereon and a provision in the new code assertedly preserving the validity of master plans approved prior to the new code's adoption.

AWD subsequently petitioned the district court for: (1) a writ of mandamus compelling Henderson to process AWD's zoning request without enforcing the requirements of HMC 19.44; (2) judicial review of Henderson's refusal to grant its zoning application; and (3) declaratory judgment. The district court granted the petition for a writ of mandamus in part, directing Henderson to finalize its decision on AWD's application for zoning, which had not yet been officially denied. The district court also retained jurisdiction to determine whether AWD must submit a new master plan pursuant to HMC 19.44 in the event Henderson denies AWD's application. In obedience to the dictates of the writ of mandamus, Henderson considered and denied AWD's zoning application.

The district court then entertained and denied AWD's petition for judicial review. The district court specifically concluded that: (1) AWD had no vested rights in the master plan approved by Henderson in 1989; (2) AWD was required to apply for an MP Master Development Plan Overlay District pursuant to HMC 19.44; (3) the requirement of a new master plan was not precluded by the previous approval of the 1989 master plan; and (4) Henderson's denial of AWD's zoning application was based upon

substantial evidence and was not arbitrary, capricious, or an abuse of discretion. This appeal ensued.

## DISCUSSION

We agree with the district court that AWD does not have "vested rights" in its 1989 master plan. In order for rights in a proposed development project to vest, zoning or use approvals must not be subject to further governmental discretionary action affecting project commencement, and the developer must prove considerable reliance on the approvals granted. *See* City of Reno v. Nevada First Thrift, 100 Nev. 483, 487, 686 P.2d 231, 233 (1984); Bd. of County Comm'rs v. CMC of Nevada, 99 Nev. 739, 747, 670 P.2d 102, 107 (1983). In the instant case, the only discretionary act performed by Henderson with respect to the 111 acres was approval of the 1989 master plan. Applications for zoning, subdivision maps, architectural design, and building permits had yet to be submitted and approved. It is clear, therefore, that AWD had no vested rights in Henderson's strict adherence to the approved 1989 master plan.

Without overruling the above authority on the vesting of a developer's rights in a proposed project, this court held, pursuant to NRS 278.250(2),[1] that "municipal entities must adopt zoning regulations that are in substantial agreement with the master plan." Nova Horizon v. City Council, Reno, 105 Nev. 92, 96, 769 P.2d 721, 723 (1989). In effect, then, although AWD's rights under the 1989 master plan had not vested, and were still subject to discretionary impositions by Henderson, the latter governmental entity was required to give substantial deference to the 1989 master plan.

Despite the foregoing analysis, the primary and as yet unresolved issue on appeal concerns the effect of Henderson's new development code on the validity of the 1989 master plan.

AWD contends that the requirement that it submit what amounts to a new master plan pursuant to HMC 19.44 conflicts with the approved 1989 master plan and HMC 19.08.010(A)(1), which provides as follows:

> Use permits, variances, architectural or design approvals, and *Master Plans*, and tentative subdivision maps including

---

[1]NRS 278.250(2) provides, in pertinent part:
  The zoning regulations shall be adopted in accordance with the master plan for land use . . . .

Planned Unit Residential Developments (PURDs) and Master Plans, *any of which are valid on the effective date of this Title, shall remain valid until their expiration date*. These projects can be built in accord with the development standards in effect at the time of approval, provided that the use permit, PURD, or design approval is valid at the time building permits are issued and that such a permit is subject to any time limits imposed pursuant to Title 15 (Building and Construction) of the Municipal Code.

(Emphasis added.) AWD concedes that the foregoing provision subjects the actual development of the 111 acres to the building requirements of the new code, but argues further that the 1989 master plan is nevertheless valid and must be given deference. AWD also contends that the zoning and development approvals for parts of Whitney Ranch (not the 111 acres in question) granted *after* the effective date of the new code, under the auspices of the revised 1989 master plan, demonstrate Henderson's lack of consistency. AWD suggests that since Henderson found the 1989 master plan sufficient to support the community projects between 1989 and 1992, the 1989 plan should have been equally sufficient and applicable when AWD sought to commence development of the 111 acres.[2]

Henderson, on the other hand, insists that AWD failed to obtain required use permits, PURDs, and design approvals prior to the effective date of the new code, thus precluding application of the 1989 master plan after the new code came into effect. Henderson also contends that HMC 19.08.010(B)(2) of the new code resolves all doubt in favor of Henderson. HMC 19.08.010(B)(2) provides:

Projects for which no application for approval of a use permit, building permit or tentative subdivision map, or application for architectural approval has been submitted and accepted as complete prior to the effective date shall be subject to all the requirements and standards of this Title.

Because AWD has never submitted an application for any of the approvals itemized in the quoted provision, Henderson concludes that development of the 111 acres is subject to the requirements and standards of the new code, including the requirement that AWD submit a new master plan and supporting documentation in compliance with HMC 19.44.

AWD's contention that Henderson did not dispute development

---

[2]The revised 1989 master plan incorporated the 111 acres into the plan but also became the revised plan for the balance of the Whitney Ranch community.

under the revised 1989 master plan until it came time to zone the 111-acre project raises justifiable suspicion that Henderson began to advocate the necessity of a new master plan only when zoning for the multi-family designated area became an issue. Our assessment of the new code, however, reveals a clear legal basis on which to reject Henderson's demand that AWD submit a new master plan.

If meaning is to be attached to both HMC 19.08.010(A)(1) and HMC 19.08.010(B)(2), we must conclude that HMC 19.08.010(A)(1) means exactly what it says, namely, that master plans previously approved by Henderson remain in force after the effective date of the new code.[3] Consistent with the foregoing premise, the only reasonable reading of HMC 19.08.010(B)(2) is that even if a master plan has been previously approved, projects for which no application for a use permit, building permit, tentative subdivision map, or architectural approval has been submitted prior to the effective date of the new code are subject to all requirements and standards of the new code *for purposes of obtaining use permits, building permits, tentative subdivision maps, and architectural approval*. AWD, as it concedes, is therefore subject to the new code in obtaining these approvals, despite the continuing validity of the 1989 master plan.[4]

Because Henderson's denial of AWD's zoning application was based upon an error of law, the fact that the denial may have otherwise been supported by substantial evidence and unabused discretion, as the district court concluded, is not relevant.

---

[3]We are constrained to note that even if Henderson had expressly annulled all master plans approved prior to the effective date of the new code, we would have substantial doubts concerning the validity of such an attempted circumvention of the policy dictates of NRS 278.250(2) as elucidated by this court in *Nova Horizon*. As we there observed, Nevada's statutory scheme mandates that municipalities adopt zoning regulations that are in substantial agreement with approved master plans. *Nova Horizon*, 105 Nev. at 96, 769 P.2d at 723. Assuming, therefore, that submission of a new master plan was intended as part of the zoning process under the new code, as the district court concluded, Henderson would still have been required to extend deference to the 1989 master plan in the process of approving the new plan. The guarantees afforded Nevada's developers by the Legislature may not be circumvented by municipal ordinance.

[4]HMC 19.44 requires submission of archaeological, environmental, geotechnical, and other data pertinent to Henderson's decision whether to approve a proposed MP Master Development Plan Overlay District. Although we have concluded that AWD is not subject to the master plan requirements of the new code, and that AWD's 1989 master plan must be accorded deference by Henderson, AWD, both in its briefs and during oral argument, has agreed to supply Henderson with all the data listed under HMC 19.44. We therefore expect that AWD will comply with HMC 19.44 to that extent, and with the conditions upon which the qualified 1989 master plan approval was based.

## CONCLUSION

For the reasons set forth above, we conclude that the district court erred in refusing to grant AWD's petition for judicial review. Accordingly, we reverse the district court's order denying AWD's petition for judicial review and remand, instructing the district court to order Henderson to process AWD's zoning application in a manner consistent with the dictates of this opinion.[5]

---

[5]Although AWD sought additional relief from the district court in the form of a writ of mandamus and a declaratory judgment, this opinion reversing the district court's denial of AWD's petition for judicial review with instructions to the district court upon remand, provides AWD with adequate relief.