LEROY LAND DEVELOPMENT
CORPORATION, a Nevada
corporation, Petitioner,

v.

TAHOE REGIONAL PLANNING AGEN-
CY, a Political Subdivision of the States
of Nevada and California, Respondent.

No. CIV–R–81–202–ECR.

United States District Court,
D. Nevada.

June 29, 1982.

Guild, Hagen & Clark, Reno, Nev., for petitioner.

Louis R. Doescher, Carson City, Nev., for respondent.

ORDER

EDWARD C. REED, Jr., District Judge.

This action initially began as a Petition for Writ of Mandate filed in State court but was timely removed to this forum. In essence, the petitioner-plaintiff Leroy Land Development Company (LLDC) seeks affirmative relief in the form of a mandatory injunction ordering that TRPA be required to grant LLDC's application for exemption of a particular development project at Lake Tahoe from project review requirements under TRPA Ordinance 81–1.

Respondent-defendant Tahoe Regional Planning Agency (TRPA) filed a motion to dismiss pursuant to Rule 12(b)(6) Fed.R. Civ.P. Because there is no genuine issue as to any material fact, the Court has chosen to treat the motion as one for summary judgment under Rule 56 of the Fed.R.Civ.P. *Hansbury v. Regents of University of California*, 596 F.2d 944 (10th Cir. 1979). The parties have been given notice of the Court's election to treat the said motion as one for summary judgment, and have been

278

given the opportunity to file documents and points and authorities in support of and in opposition to the granting of the motion.

The sole issue is whether LLDC is entitled to an exemption from certain project review requirements by TRPA based on the doctrine of vested rights.

The history of the construction project involved here, known as "Bitterbrush", is important. The Bitterbrush subdivision condominium project was planned as two units consisting of a total of some 250 individual condominiums. Unit No. 1, consisting of 26 separate residences, was constructed in 1971. The final subdivision map for the Bitterbrush project including Unit No. 2, consisting of a total of approximately 224 units, was approved by TRPA in 1972. A conditional use permit for Bitterbrush Units 1 and 2, also approved by TRPA, was issued about the same time.

A lapse in activity, apparently due to an unfavorable economic climate, then occurred and no further progress was made in the development of Unit No. 2 of Bitterbrush until 1976 when LLDC's predecessor in interest entered into a subdivision agreement with Washoe County. A subsequent development agreement between the same parties was executed in October of 1978. Development of Unit No. 2 was divided into two phases and following the acquisition of the Bitterbrush project by LLDC in 1979 all necessary governmental approvals, including the necessary building permits, were obtained for the first phase consisting of 21 separate dwelling units. The first phase of Unit No. 2 of the subdivision was fully completed in 1980.

In March 1980 LLDC and Washoe County entered into a subdivision agreement as to the necessary offsite improvements for Phase 2 of Unit No. 2 comprising the remaining 203 condominiums of the Bitterbrush project. Also in March 1980 an irrevocable letter of credit was issued by Valley Bank of Nevada, to Washoe County in the sum of $3,224,000 on behalf of LLDC for the aforesaid offsite improvements. To date LLDC has expended approximately $700,000 for acquisition of Bitterbrush Unit

No. 2 and over $1,000,000 for offsite improvements of the subdivision project. The last discretionary approval obtained from TRPA by LLDC regarding the construction of Unit No. 2 was contained in a letter written in April 1980 on behalf of TRPA indicating that the agency had approved the final improvement drawings for Unit No. 2 of Bitterbrush, including surface water management and erosion control measures.

The Tahoe Regional Planning Compact adopted and enacted in 1969, was amended extensively in 1980. The amendments to the Compact were approved by Congress in December 1980 and Ordinance 81–1, adopted by TRPA on February 26, 1981, effective April 26, 1981, was implemented pursuant to Article VI(a) of the Amended Compact which provided that "The governing body shall adopt all necessary ordinances, rules and regulations to effectuate the adopted regional plan." The underlying rationale for the creation of the bi-state compact and the continued existence of TRPA as set forth in Article I(b) of the Amended Compact is that "In order to enhance the efficiency and governmental effectiveness of the region, it is imperative that there be established a Tahoe Regional Planning Agency with the powers conferred by this compact including the power to establish environmental threshold carrying capacities and to adopt and enforce a regional plan and implementing ordinances which will achieve and maintain such capacities while providing opportunities for orderly growth and development consistent with such capacities."

The effect of the 1980 amendments to the Tahoe Regional Compact was to make the proposed development of the 203 condominium units of Phase 2 of Unit No. 2 of the Bitterbrush project subject to project review requirements adopted by TRPA under Article VI of the amended compact such as that embodied in Ordinance 81–5 adopted by TRPA in 1981. Upon notification that further development of Bitterbrush would be subject to the newly enacted project review requirements, LLDC filed applica-

tions with TRPA in April and May, 1981, for exemption of the Bitterbrush subdivision Unit No. 2 from the new requirements. The request was denied by TRPA in June, 1981.

In seeking the desired exemption from the applicable TRPA project review requirements LLDC relies on the doctrine of vested rights which "... protects property owners from changes in zoning or other land use regulations which occur before the completion of the owner's development project." *Billings v. California Coastal Commission,* 103 Cal.App.3d 729, 163 Cal. Rptr. 288, 291 (1980). The vested rights rule is neither a common law rule nor a constitutional principle, but is predicated upon governmental estoppel. *Patterson v. Central Coast Regional Commission,* 58 Cal. App.3d 833, 130 Cal.Rptr. 169 (1976). Thus, "where an owner of property, in good faith reliance upon a governmental representation that construction is fully approved, has suffered substantial detriment by proceeding with the development, the government is estopped from prohibiting the project by a subsequent change in law." *Id.*

LLDC contends that its right to complete construction of the remaining 203 units of Unit No. 2 of the Bitterbrush subdivision is vested because it has obtained all of the necessary discretionary government approvals excepting building permits and relied on such approvals to its detriment. The only remaining approval apparently not obtained from the TRPA as to construction of Phase 2 of Unit No. 2 of the Bitterbrush subdivision was approval of the architectural design of the remaining 203 units of Phase 2. TRPA concedes approval of the architectural design would have been granted had it not been for the amending of the compact and adoption of Ordinance 81–1 (which defines projects subject to the new project review requirements) since the design was essentially repetitive of and identical to Phase 1 as approved and actually built.

TRPA argues that under the relevant case law LLDC would have to have obtained building permits for construction of the remaining units of Bitterbrush and substan-

tially relied thereon to its detriment before a vested right can be found for completion of the project. TRPA concedes that if LLDC has a vested right to construction of the remainder of Unit No. 2 of the Bitterbrush subdivision, Unit No. 2 would not be a "project" subject to review pursuant to TRPA Ordinance 81–1.

■ In determining whether LLDC has acquired a vested right in the completion of Unit No. 2 of Bitterbrush the Court is first faced with the question of what law should apply. TRPA argues that since this case essentially arises under the Tahoe Regional Compact, a bi-state agreement, that the law of the two signatories to the agreement, California and Nevada should control. Barring conflict between the two states in their respective acknowledgment and refinement of the law of vested rights this approach appears both simple and appropriate.

By consenting to the Tahoe Regional Planning Compact in 1969 and subsequent amendments thereto in December 1980, Congress transformed the agreements of California and Nevada into federal law. *League to Save Lake Tahoe v. Tahoe Regional Planning Agency,* 594 F.2d 181, 190 (9th Cir. 1979); *Jacobson v. Tahoe Regional Planning Agency,* 566 F.2d 1353 (9th Cir. 1977). Thus, "questions concerning the interpretation and application of TRPA ordinances present federal questions under 1331(a)." *League to Save Lake Tahoe v. B.J.K. Corp.,* 547 F.2d 1072, 1075 (9th Cir. 1976). However, in consenting to the Compact, "Congress did no more than incorporate the agreement of the two parties into the body of federal law; it did not make applicable to the agreement the entire panoply of *federal* administrative and substantive standards." *California Tahoe Regional Planning Agency v. Jennings,* 594 F.2d 181, 190 (9th Cir. 1979). The Court, then, is not simply free to apply what it may view as the best law on the doctrine of vested rights but rather should adhere to the common law of the two signatories to the bi-state agreements. Any other approach would not be in keeping with the spirit and intent of the Compact. The Court is not simply

sitting in exercise of its diversity jurisdiction where the law of a particular state is applied, nor is this a proper case for application of federal statutory or common law. Rather, the Court is sitting "to prevent an impairment of the effective functioning of the Compact." *Jennings, supra*, 594 F.2d at p. 191.

In *Kings Castle v. Washoe County Board of Commissioners*, 88 Nev. 557, 502 P.2d 103 (1972), the Nevada Supreme Court cited the California case of *Spindler Realty Corporation v. Monning*, 243 Cal.App.2d 255, 53 Cal.Rptr. 7 (1966), with approval. In *Kings Castle* the Nevada Supreme Court held that the appellant had no vested right which would provide a basis to object to the application of a superseded zoning regulation. Since then the vested rights doctrine has been more fully developed in the California case law while no new Nevada cases have dealt specifically with the subject.

In *Spindler, supra*, 53 Cal.Rptr. at 11, the court, in quoting from the earlier case of *Anderson v. City Council*, 229 Cal.App.2d 79, 89–90, 40 Cal.Rptr. 41 (1964), held that a developer who had obtained a grading permit pursuant to preparation of his property for construction of a development project and expended substantial sums thereon "... did not acquire a vested right, as against future zoning, merely by purchasing the property in reliance on the existing zoning and thereafter making certain endeavors to develop it for a specified use." Some years later, in the important case of *Avco Community Developers v. South Coast Regional Commission*, 17 Cal.3d 785, 553 P.2d 546, 552, 132 Cal.Rptr. 386 (1976), the California Supreme Court found the *Spindler* and *Anderson* cases controlling and stated that:

"[t]hey stand for the proposition that neither the existence of a particular zoning nor work undertaken pursuant to governmental approvals preparatory to construction of buildings can form the basis of a vested right to build a structure which does not comply with the laws applicable at the time a building permit is issued. By zoning the property or issuing approvals for work preliminary to construction the government makes no representation to a landowner that he will be exempt from the zoning laws in effect at the subsequent time he applies for a building permit or that he may construct particular structures on the property, and thus the government cannot be estopped to enforce the laws in effect when the permit is issued."

Inasmuch as LLDC never obtained a building permit for construction of the remaining planned 203 dwelling units at Bitterbrush, it takes the position acknowledged but not decided in several cases which state that while:

"It may be true that '[a]lthough the cases speak of vested rights in terms of reliance upon a *building permit* [citations omitted] ... a building permit may no longer be a *sine qua non* of a vested right ... [U]nder modern land development practices various governmental approvals are required before the issuance of a building permit, each approval pertaining to different aspects of the project, and ... a vested right might arise before the issuance of a building permit if the preliminary permits approve a specific project and contain all final discretionary approvals required for completion of the project.' [Citations.]" *Patterson v. Central Coast Regional Com, supra*, 58 Cal. App.3d, p. 844, 130 Cal.Rptr., p. 175 (1976); *Billings v. California Coastal Commission*, 103 Cal.App.3d 729, p. 735, 163 Cal.Rptr. 288, 291 (1980).

While the viability of the so-called final discretionary approval test relied on by LLDC seemed at best questionable in light of *Avco*, it was expressly rejected in the recent case of *South Central Coast Regional Commission v. Charles A. Pratt Construction Company*, 128 Cal.App.3d 830, 180 Cal. Rptr. 555 (1982).

The reasons for breaking the construction of such a large project as Bitterbrush into several parts may be both reasonable and feasible from an economic standpoint, but it does not appear that LLDC could reasonably believe that primary governmental ap-

provals obtained when the entire project was planned by LLDC's predecessors over a decade ago would effectively immunize the property from future changes in the law such as use regulations and possible ordinances which may be promulgated by the TRPA. Such approvals cannot be viewed in this case as the functional equivalent or *sine qua non* of a building permit. To so hold would allow a landowner who has gained preliminary governmental approval for a phased development project such as Bitterbrush the right to complete construction for the indefinite future. This would result in "serious impairment of the government's right to control land use policy." *South Central Coast Regional Commission v. Charles A. Pratt Construction Company, Inc., supra,* 180 Cal.Rptr. at 562 (1982), quoting from *Avco v. South Coast Regional Commission, supra,* 17 Cal.3d at 797, 553 P.2d 546, 132 Cal.Rptr. 386.

Certainly the result here is a harsh one. A developer perhaps should not, in effect, be penalized for being unable to complete construction of a large-phased development project such as Bitterbrush all at once. But the law of vested rights applicable here has been narrowly defined. Although the relevant line of cases is not always clear and consistent, the basic rule seems to be that a building permit, in addition to substantial reliance thereon to the detriment of the landowner, is necessary before a vested right in completion of the project may be found. While such is not the law at the present time, a vested right may also ultimately be recognized in California and/or Nevada in a case where a landowner has not obtained a building permit but has obtained all discretionary governmental approvals *and* reasonably incurs substantial detriment thereon. Even though the building permit issuance test appears possibly to stand on a doubtful and arbitrary foundation, it is the law which the Court is obligated to apply here. Perhaps it would seem more reasonable that a vested right ought to attach at the time one seeking to construct a project has obtained all necessary discretionary approvals of governmental agencies, has substantially relied thereon to

his detriment, and lacks only obtaining a building permit, which will be issued in the matter of course mechanically by simply meeting the requirements of the previous approval, applying for the permit and paying the necessary fees. The Court had some difficulty ascribing much significant or magical to the ministerial act of issuing a building permit mandated by prior discretionary approvals of governmental agencies. Nevertheless, even though the final discretionary approval test might provide a fairer and more logical basis to determine vested rights, it is not the law. This Court is not free to choose what it might believe to be the better test.

Furthermore, although LLDC did obtain the necessary approvals to actually construct the 21 units in Phase 1 of Unit No. 2, as well as essentially all of the necessary government approvals from both TRPA and Washoe County to complete the 203 remaining units in Phase 2, it had no right to expect that the land use regulations and ordinances applicable to Bitterbrush would remain the same indefinitely. Also, the law applied here, although as noted above possibly as somewhat rigid and arbitrary, does appear to be the rule followed in many other jurisdictions. *See* Anno. 89 A.L.R.3d 1051. While the Court agrees with criticism of the building permit requirement in the vested right doctrine (Cunningham, Kremer, *Vested Rights, Estoppel, & the Land Development Process,* 29 Hastings L.R. 623) as not being consistent with the realities of modern land development practices where landowners are frequently required to obtain a number of governmental approvals often necessitating the expenditure of large sums of money, as concluded above the Court here may not carve out an exception to the building permit requirement as recognized by dicta in several California cases. *Patterson v. Central Coast Regional Commission, supra,* 58 Cal.App.3d at p. 844, 130 Cal.Rptr. 169; *Billings v. California Coastal Commission, supra,* 103 Cal.App.3d at p. 735, 163 Cal.Rptr. 288.

There are other important arguments which support the decision which the Court

282

makes today. The important public policy of both California and Nevada to protect the sensitive environment at Lake Tahoe as manifested in their creation of TRPA and the contents of the Tahoe Regional Compact is a factor which is also not lost upon the Court. Certainly LLDC purchased the Bitterbrush subdivision with full knowledge of the existence of TRPA, a bi-state agency empowered to adopt ordinances, rules and regulations which may affect a landowners ability to proceed with a subdivision project such as Bitterbrush as initially planned.

Although such observation has no bearing or impact whatever upon the Court's findings and decision, it appears that the result reached here is far less harsh than the fate met by most of the landowners seeking recognition of a vested right in the cases herein cited. While completion of the Bitterbrush project as first planned some 12 years ago may not be possible under the newly enacted review requirements of TRPA, it appears that the intended use of the property is not being disturbed as occurred in the line of California cases mostly involving zoning changes upon application of the California Coastal Act of 1972. The main problem which LLDC apparently faces is that if it is not exempt, and is a "project" as defined by Ordinance 81-1, then it necessarily is subject also to TRPA Ordinance 81-5 which requires stricter on-site water runoff requirements for subdivision projects than those in effect when Bitterbrush was first planned.

The Court now finds that under the circumstances of this case LLDC has no vested right in the completion of the Bitterbrush project.

IT IS HEREBY ORDERED that the motion to dismiss filed by respondent Tahoe Regional Planning Agency herein treated as a motion for summary judgment is GRANTED.

IT IS FURTHER ORDERED that the Clerk of the Court enter the appropriate form of judgment in favor of Tahoe Regional Planning Agency.