**WAL–MART STORES, INC., a Delaware Corporation; Eastern Beltway, Ltd., a Nevada Limited Liability Company, Plaintiffs,**

v.

**COUNTY OF CLARK, a political subdivision of the State of Nevada, Defendant.**

**Nos. CV–S–1452–PMP (RJJ), CV–S–1598–PMP (RJJ).**

United States District Court, D. Nevada.

Dec. 1, 1999.

Will Kemp, Harrison, Kemp & Jones, Las Vegas, NV, Jon B. Comstock, Wal-Mart Stores, Inc., Bentonville, AR, for plaintiff.

Robert T. Warhola, Deputy District Attorney, Stewart Bell, District Attorney, Las Vegas, NV, for defendant.

## ORDER AND PRELIMINARY INJUNCTION

PRO, District Judge.

## I. INTRODUCTION

On October 18, 1999, Plaintiff Wal-Mart Stores, Inc. ("Wal-Mart") and Plaintiff Eastern Beltway, LTD. ("Eastern Beltway"), filed a Complaint in Federal Court against Defendant Clark County ("County") (Doc. # 1). Also on October 18, 1999, Plaintiffs filed an Application for Temporary Restraining Order and Motion for Preliminary Injunction (Doc. # 3). On October 19, 1999, a hearing was held on Plaintiffs' request for a Temporary Restraining Order at which this Court granted partial relief, ordering that Clark County Ordinance 2377 would not become effective as to Plaintiffs in regard to the Craig/Nellis and Eastern Beltway sites pending a ruling on Plaintiffs' Motion for Preliminary Injunction (Doc. # 6). The Order however, did not grant the mandatory injunctive relief sought by Plaintiffs that building permits be issued by the County for the two locations. The County filed its Opposition to Plaintiffs' Motion for Preliminary Injunction on October 29, 1999 (Doc. # 19). On November 5, 1999, Wal-Mart and Eastern Beltway each filed a Reply to the County's Opposition (Doc. # 23 and # 27 respectively). The County filed its Answer to Plaintiffs' Complaint on November 5, 1999 (Doc. # 26). Eastern Beltway filed Supplemental Points and Authorities in Support of its Reply on November 10, 1999 (Doc. # 31). In addition to the documents described above, numerous affidavits and exhibits were also filed with this Court.

On November 10, 1999, Wal-Mart removed a pending State Court action to this Court, case number CV–S–99–1598–PMP (RJJ). The removed action was consolidated with CV–S–99–1452–PMP (RJJ) already pending before this Court (Doc. # 33).

Finally, in response to questions by the Court at the hearing on Plaintiffs' Motion for Preliminary Injunction conducted on November 15, 1999, the parties advised that Defendant Clark County would not seek remand of the removed state action nor would they seek abstention, but stipulated to have this Court decide the issues presented.

## II. FACTUAL BACKGROUND

This case concerns the adoption of Clark County Ordinance 2377, passed on October 6, 1999 and becoming effective on October 21, 1999. Ordinance 2377 prevents businesses which exceed one hundred ten thousand (110,000) square feet from devoting more than seven and one half (7½) percent of retail space to the sale or display of food. Under the Ordinance, a business is defined as either a single store or two or more stores in the same shopping center which share check stands, management, warehousing, or distribution facilities. The stated purposes for adoption of the Ordinance were to disperse pedestrian and vehicular traffic, preserve property values and control blight. The full text of Ordinance 2377 is attached to this Order as Appendix A.

Wal-Mart argues that enforcement of the Ordinance would effectively prevent it from building two planned "Supercenters" in Clark County. The two proposed Wal-Mart "Supercenters" are described as consisting of approximately two hundred five thousand (205,000) square feet with roughly sixty-five thousand (65,000) square feet of space devoted to grocery items. The planned grocery space in each "Supercenter" would exceed the seven and one half (7 ½) percent cap under the Ordinance.

The two sites at issue are the Craig/Nellis site, located at the Southeast corner of Craig Road and Nellis Boulevard and the Eastern Beltway site, situated near Eastern Avenue and the I–215 Beltway. Both sites are located in Clark County, Nevada.

Plans for creation of a "Supercenter" at the Eastern Beltway location began as far back as May 22, 1998, when Eastern Beltway first proposed that Wal–Mart convert an existing Wal–Mart store into a "Supercenter" as well as build a Sam's Club.[1] Wal–Mart thereupon entered into a twenty (20) year lease agreement (with sixty (60) more option years) with Eastern Beltway to lease the space necessary to expand the existing Wal–Mart into a "Supercenter." On October 13, 1999, an application for a final building permit was submitted to the Building Department for the Wal–Mart "Supercenter" expansion. Between May 22, 1999 and October 15, 1999, the County as well as other governmental entities granted numerous plan approvals and issued a number of permits relating to the Eastern Beltway project.[2] On October 15, 1999, the final building permit for the Sam's Club was submitted for approval.

Prior to February 3, 1999, Wal–Mart also entered into a contract to purchase the property to build a "Supercenter" at the Craig/Nellis site. The purchase was expressly conditioned upon obtaining appropriate zoning to construct a "Supercenter" at the location. Wal–Mart obtained zoning approval by a unanimous vote of the Clark County Commission on February 3, 1999. Wal–Mart closed escrow and paid $5,034,354.24 to purchase the property. Again, Clark County and other governmental entities issued a number of permits and approvals for the Craig/Nellis site prior to the adoption and effective date of Clark County Ordinance 2377.[3] On October 14, 1999, Wal–Mart was informed that the building permit was ready to be issued for the Craig/Nellis site.

That same day, the Clark County District Attorney's office instructed the Building Department not to issue the requested building permits, pending a judicial determination of whether such permits should be issued. Had the District Attorney's office not instructed the Building Department not to issue the building permits, a

1. It does not appear in a reading of the Ordinance, that the proposed Sam's Club would be subject to the seven and one half (7 ½) percent restriction because it is a membership wholesale club which does not sell to the general public.

2. On May 6, 1999, a tentative map for the Wal–Mart expansion and Sam's Club was approved by Clark County. On July 8, 1999, Clark County approved the design review application. On July 8, 1999, Clark County approved the amended traffic study. On July 14, 1999, Clark County issued a dust control permit. On July 29, 1999, Clark County approved the drainage study. On August 13, 1999, the Clark County Sanitation District approved improvement plans. On September 8, 1999, improvement plans for the site were approved by Clark County. On October 1, 1999, Clark County Public Works reviewed and accepted the technical drainage study. On October 8, 1999, Clark County approved the Eastern Beltway grading permit. On October 14, 1999, Las Vegas Valley Water District approved improvement plans. On October 14, 1999, the foundation permit for Sam's Club was approved but not issued by Clark

County. On October 14, 1999, the foundation permit for the expanded Wal–Mart "Supercenter" was approved by Clark County but not issued.

3. On June 3, 1999, Clark County approved the traffic study. On June 9, 1999, Clark County approved sanitary sewer line plans. On July 6, 1999, the State of Nevada Division of Environmental Protection issued a stormwater permit to Wal–Mart. On July 8, 1999, Clark County approved the subdivision map. On July 12, 1999, the Clark County Health Department gave approval to the final map. On August 4, 1999, Las Vegas Boulevard access was approved by the Nevada Department of Transportation.

On September 22, 1999, Clark County approved the technical drainage study. Also on September 22, 1999, Clark County issued the asbestos demolition certificate. On October 1, 1999, the Clark County Fire Department signed and approved original plans. On October 5, 1999, the dust control permit was issued by Clark County. On October 13, 1999, the Nevada Department of Transportation approved encroachment.

final building permit would have been issued for the Craig/Nellis site and the foundation permits for the Eastern Beltway site would have been issued prior to the effective date of the Ordinance.

## III. LEGAL STANDARD FOR INJUNCTIVE RELIEF

■ To obtain a prohibitory preliminary injunction, restraining a party from further action, Wal–Mart must make a clear showing of either: (1) probable success on the merits and irreparable injury; or (2) sufficiently serious questions going to the merits to make the case a fair ground for litigation and a balance of hardships tipping decidedly in favor of Plaintiffs. *See Topanga Press, Inc. v. City of Los Angeles,* 989 F.2d 1524, 1528 (9th Cir.1993). The Court notes that "these are not two separate tests, but 'merely extremes of a single continuum.'" *Id.* (citation omitted).

> [A] moving party need not demonstrate that he risks irreparable injury, but he must at least show that he will suffer a degree of hardship that outweighs the hardship facing the opposing party if the injunction is not issued. Similarly, a moving party need not demonstrate that he will succeed on the merits, but must at least show that his cause presents serious questions of law worthy of litigation.

*Id.*

■ "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Diamontiney v. Borg,* 918 F.2d 793, 795 (9th Cir.1990) (quoting *Oakland Tribune, Inc. v. Chronicle Publishing Co.,* 762 F.2d 1374, 1376 (9th Cir.1985)). Moreover, "in cases where the public interest is involved, the district court must also examine whether the public interest favors the

plaintiff." *Fund for Animals, Inc. v. Lujan,* 962 F.2d 1391, 1400 (9th Cir.1992). Preventing the enforcement of Ordinance 2377 against the two locations at issue requires a prohibitory injunction.

■ Where, as here, a party seeks a mandatory preliminary injunction, forcing another party to take action that goes beyond maintaining the status quo, such relief is "subject to heightened scrutiny and the injunction requested should not be issued unless the facts and law clearly favor" the moving party. *Hilton Hotels Corp. v. ITT Corp.,* 962 F.Supp. 1309, 1310 (D.Nev.1997); *see also Dahl v. HEM Pharmaceuticals Corp.,* 7 F.3d 1399, 1403 (9th Cir.1993). Forcing the County to issue the required final building permits in the normal course for both the Craig/Nellis and Eastern Beltway sites would require the issuance of a mandatory injunction.[4]

## IV. DISCUSSION

For the reasons set forth below, the Court finds that Wal–Mart and Eastern Beltway have met the burden for issuance of a prohibitory injunction preventing enforcement of Ordinance 2377 specifically against Wal–Mart's Craig/Nellis and Eastern Beltway sites as well as the burden for a mandatory injunction requiring the County to issue the final building permits for the two locations in the normal course.

### A. Likelihood of Success on the Merits

#### 1. Vested Rights

Generally, the vested rights doctrine protects a landowner or occupier from subsequent zoning changes to real property after development has begun on such property. "The matter typically arises when a landowner or developer commences a par-

---

**4.** Though not styled as such, Plaintiffs' Motion for Preliminary Injunction essentially constitutes a Petition for Writ of Mandamus. Rule 82(b) of the Federal Rules of Civil Procedure states, "[t]he writs of scire facias and manda-

mus are abolished. Relief heretofore available by mandamus or scire facias may be obtained by appropriate action or by appropriate motion under the practice described in these rules."

ticular land use activity in accordance with zoning regulations that are amended at some point during the development process." 35 Am.Jur.3d *Proof of Facts* 385 § 1 (1996). "Essentially, the landowner is asserting that when he or she commenced development activities under the prior zoning scheme, he acquired a property right, which cannot now be abridged by the government's exercises of its police powers, that is, the amended zoning ordinance." *Id.*

■ State law determines the validity of local building permit issuance. *California Tahoe Regional Planning Agency v. Jennings*, 594 F.2d 181, 191 (9th Cir.1979). Nevada first addressed the issue of vested rights to the application of superseded zoning regulations in *Kings Castle v. Washoe County Board of County Commissioners*, 88 Nev. 557, 502 P.2d 103 (1972). The Nevada Supreme Court held in an action for review of a zoning application that there are no vested rights in the approval of plans which did not conform to an ordinance in effect at the time the court ruled but did conform to an ordinance at the time the plans were submitted. *Id.* "[W]e believe the district court correctly held that appellants had no vested right to application of superseded zoning regulations, and that the ordinances in effect when the court ruled were controlling." *Id.* at 104.

In *LeRoy Land Development Corp., v. Tahoe Regional Planning Agency*, 543 F.Supp. 277 (D.Nev.1982), this Court held that a building permit as well as substantial reliance was necessary before a vested right in completion of the project could be found. This Court went on to state however, that "[w]hile such is not the law at the present time, a vested right may also ultimately be recognized in California and/or Nevada in a case where a landowner has not obtained a building permit but has obtained all discretionary governmental approvals and reasonably incurs substantial detriment thereon."[5] *Id.* at 281. The court went on to state that the rule requiring a building permit was a harsh one and that the discretionary act approach seemed more reasonable since there was nothing "magical" about the actual issuance of a building permit. *Id.*

In the next case discussing the vested rights doctrine the Nevada Supreme Court stated that:

> Although certain inroads are appearing in the general rule that vested rights against changes in the zoning laws exist only after the issuance of a building permit and the commencement of construction, such inroads do not confer vested rights unless zoning or use approvals are not subject to further governmental discretionary actions affecting project commencement.

*Board of County Comm'rs of the County of Clark v. CMC of Nevada, Inc.*, 99 Nev. 739, 670 P.2d 102, 107 (1983). This statement by the Nevada Supreme Court illustrates the apparent transition from a strict building permit requirement to an approach whereby rights may vest in superseded zoning ordinances once all discretionary approvals have been obtained and there is substantial detrimental reliance on such prior approvals.

In *Fernhoff v. Tahoe Regional Planning Agency*, 599 F.Supp. 185 (D.Nev.1984), the court stated that "even the issuance of a building permit does not confer a vested right 'unless zoning or use approvals are not subject to further governmental discretionary actions affecting project commencement.'" *Id.* at 188 (quoting *CMC of Nevada, Inc.*, 670 P.2d at 107; *See also Russian Hill Improvement Ass'n v. Board of Permit Appeals*, 66 Cal.2d 34, 56 Cal. Rptr. 672, 423 P.2d 824, 828 n. 11 (1967)).

---

5. Although presently in California, the traditional building permit requirement has not been totally abrogated, the emergence of "development agreements" have allowed builders in some contexts to acquire by contract the equivalent of a vested right early on in development of a project. *Citizens for Responsible Government v. City of Albany*, 56 Cal.App.4th 1199, 1213, 1214, 66 Cal.Rptr.2d 102 (1997).

This Court interprets the language used in *Fernhoff* to mean that although a building permit may have been issued, in certain circumstances, discretionary approvals by governmental bodies may remain and the issuance of a building permit may be irrelevant to the question of whether rights have vested. In *Russian Hill,* for example, a permit was issued which authorized construction of a building. The issuance of the permit was subject to an appeal before a Board of Permit Appeals, an entity specifically given the power to revoke such permits. The trial court granted a writ of mandate directing the Board of Permit Appeals to revoke the permit and the Supreme Court of California affirmed the trial court's decision. Thus in *Russian Hill* discretionary acts remained after issuance of the building permit.

■ The following year the Nevada Supreme Court decided *City of Reno v. Nevada First Thrift,* 100 Nev. 483, 686 P.2d 231 (1984). At first glance *City of Reno,* might, as Clark County argues, be read to stand for the proposition that the court was reversing directions and moving back toward requiring the issuance of a building permit before the vesting of rights. A closer look however reveals, that the *City of Reno* opinion is consistent with adoption of the discretionary acts approach. The court stated, "[w]e hold that when a building permit has been issued, vested rights against changes in zoning laws exist after the permittee has incurred considerable expense in reliance thereupon." *Id.* at 233. The court in *City of Reno* simply concluded that the issuance of a building permit does in fact create a vested right because there are no further discretionary acts remaining to be performed after issuance of a building permit. The holding in *City of Reno* reverses *CMC of Nevada, Inc.* in so far as its holding that discretionary acts could be performed after the issuance of a building permit. This Court notes the distinction between requiring a building permit before rights vest and the issuance of a building permit as evidence

that there are no further discretionary acts to be performed. In the view of this Court, *City of Reno* does not foreclose the situation where there are no more discretionary acts to be performed prior to the granting of building permits.

■ Most recently, the Nevada Supreme Court decided *American West Development, Inc. v. City of Henderson,* 111 Nev. 804, 898 P.2d 110 (1995), in which Nevada clearly adopted the discretionary act approach stating "[i]n order for rights in a proposed development project to vest, zoning or use approvals must not be subject to further governmental discretionary action affecting project commencement, and the developer must prove considerable reliance on the approvals granted." *Id.* at 112. Language in the decision requiring that a building permit be issued before rights could vest is noticeably absent. The County argues that the court's statement, "[a]pplications for zoning, subdivision maps, architectural design, and building permits had yet to be submitted and approved" is evidence that the rule requires having a building permit before rights vest. *Id.* Taken in context, however, the court was simply referring to how far the project had proceeded and was not making a statement as to the requirements for vesting.

The County cites the case of *Boulder City v. Cinnamon Hills Associates,* 110 Nev. 238, 871 P.2d 320 (1994), in arguing that the issuance of a building permit is a discretionary act. That case is, however, clearly distinguishable from the one now before the Court. The *Cinnamon Hills* case concerned a dispute over the denial of a building permit to construct a senior citizens housing complex. The court held that the grant of a building permit in that case was a discretionary act. *Id.* at 325. The ordinance at issue in *Cinnamon Hills* was a Boulder City zoning ordinance, not a Clark County zoning ordinance. Resolution 638, which served to define an exception to the general Growth Control Ordinance, specifically stated that

senior citizen housing must be "approved by the City." Cinnamon Hills argued that because the development project fell within the exception, issuance of a building permit was mandatory. The court stated that even if an entity were to meet the requirements of Resolution 638, the development project would still have to be approved by Boulder City, an obviously discretionary act. In the current dispute, the County fails to cite to any Clark County ordinance which would allow the County to retain discretion to issue building permits for the two "Supercenters."

Further, the issuance of a building permit is a purely ministerial act in this case. A ministerial act is defined as "an act performed by an individual in a prescribed legal manner in accordance with law, without regard to, or the exercise of, the judgment of an individual." *Foster v. Washoe County*, 114 Nev. 936, 964 P.2d 788, 792 (1998). In his affidavit, Robert Weber states:

> Under my direction, building department employees perform a review of construction documents for proposed construction to check for conformance with applicable building codes and zoning regulations. When construction documents are found to be in conformance with the applicable building codes and zoning regulations, I cause to be issued permits to authorize the proposed construction to proceed.

(County's Opp'n to Pls.' Mot. for Prelim.Inj., Ex. H). Robert Weber's statement describes the process by which a building permit is issued. He does not state that either he or his department are given the discretion to deny a building permit when construction documents are in conformance with building codes and zoning regulations. The issuance of a building permit is thus not a discretionary act in this case.

The record before the Court establishes that Wal–Mart has obtained all necessary discretionary approvals pertaining to both the Craig/Nellis and Eastern Beltway sites. In this regard, Wal–Mart provided a transcript of a conversation which took place on October 14, 1999, between Dean Friedli, the Assistant Director of the Clark County Building Department and Bruce Barton, Vice President of Development & Finance of Territory, Inc., regarding the issuance of permits.

> DEAN FRIEDLI: We are in a position where we would issue Brooks, being the licensed contractor, the permit as of today. So since the DA's told us, the District Attorney's office advised us not to do that, we will note in the computer system for you that we would have issued those today. So whatever determination's made, permits were issued to go ahead on 10–14. I mean you guys have—you guys have jumped through all the hoops. You got all the approvals, all the clearances and everything you needed to do that. (page 1, lines 11–23)

> BRUCE BARTON: Okay. (page 1, line 24)

(Index of Ex. in Supp. of Pls.' Application of T.R.O. and Injunctive Relief, Ex. 16G).

As part of the test of whether Wal–Mart has a vested right in completion of both "Supercenter" projects, Wal–Mart must show that it relied on the approvals given. *See American West Development, Inc.*, 898 P.2d at 112. The Court finds that Wal–Mart has met this burden. Relating to the Craig/Nellis location, Wal–Mart purchased the property on February 3, 1999, for $5,034,354.24 after zoning approval had been given from Clark County. Wal–Mart has spent more than & 200,000.00 on architects, civil engineers and geo-technical engineering. Wal–Mart paid $47,728,000 to Nevada Power Company, & 68,006.50 to the City of North Las Vegas and $11,531.74 to the Clark County Public Works for a grading permits and costs relating to the project. In regard to the Eastern Beltway site, Wal–Mart prepared and entered into a twenty year lease with Eastern Beltway. Wal–Mart entered into a design contract with MCG as well as

paying $14,918.00 for services. Wal–Mart paid the Clark County Building Department $2,788.20, paid the Las Vegas Valley Water Authority $48,935.00, paid EKN engineers $50,278.73, paid the Clark County Treasurer $118,346.32, paid Terracon Consultants $9,100.00 and entered into a construction contract for grading. Although some of these events took place after Wal–Mart was made aware of the proposed Ordinance, or one like it that was under consideration by Clark County, this Court nonetheless finds that Wal–Mart substantially and reasonably relied on the approvals given.

The County does not contest Wal–Mart's claim that there are no other discretionary acts with regard to zoning or approval requirements. Instead the County claims that withholding building permits is proper under the pending ordinance doctrine. (County's Opp. to Pls.' Mot. for Prelim.Inj., page 33 line 14). In this regard, Clark County argues that it has the authority to enforce a pending, but not yet effective zoning ordinance under *Kings Castle*, 502 P.2d at 104 and *Williams v. Griffin*, 91 Nev. 743, 542 P.2d 732 (1975), among others.

The basis for the pending ordinance doctrine is to prevent parties from being able to circumvent a newly adopted zoning ordinance by obtaining zoning approval before the new ordinance goes into effect. Here, however, use of the pending ordinance doctrine to prevent Wal–Mart from obtaining building permits for the Craig/Nellis and Eastern Beltway locations does not serve to eliminate the problems for which the doctrine was intended. Clark County attempted to halt Wal–Mart's development of the two proposed "Supercenters" after

rights had vested to complete both projects. Had Clark County invoked the pending ordinance doctrine earlier in time, prior to the vesting of rights, such an exercise of authority might have been proper. It would be a perversion of the pending ordinance doctrine if it could be used once rights to a particular piece of property had vested. In addition, if the pending ordinance doctrine constituted a discretionary act then the rule for vesting would revert back to a building permit requirement, a result not intended under the doctrine.

The Court therefore finds that Wal–Mart and Eastern Beltway have shown that both the facts and the law clearly favor them. Wal–Mart has a vested right to complete both "Supercenter" stores at the Craig/Nellis and Eastern Beltway sites free of the size restrictions of Clark County Ordinance 2377.

## 2. Clark County Code § 29.08.040

Clark County Code § 29.08.040 generally provides that when a party has begun actual construction on a particular building or development project, that party does not have to modify his or her plans, construction or the designated use of any building. The stated purpose of the section is to avoid undue hardship.[6] This section of the Clark County Code is consistent with a vested rights approach whereby a building permit is not required. It is consistent in that a particular development project may have begun actual construction, as defined in Clark County Code § 29.08.040, prior to obtaining a final building permit.

---

**6.** 29.08.040 Avoidance of undue hardship. To avoid undue hardship, nothing in this chapter shall be deemed to require a change in the plans, construction or designated use of any building on which actual construction was lawfully begun prior to effective date of adoption of the ordinance codified in this title or amendment of this title and upon which actual building construction has been carried on diligently. Actual construction is defined

to include the placing of construction materials in permanent position and fastened in a permanent manner. Where excavation, demolition or removal of an existing building has substantially begun preparatory to rebuilding, such excavation, demolition to removal shall be deemed to be actual construction, provided that work shall be carried on diligently to completion. (Ord.2068 § 2 (part), 1998).

First, in describing what constitutes actual construction, § 29.08.040 states "[a]ctual construction is defined to include...." Use of this language implies that actual construction could include other acts not specifically provided for in § 29.08.040 including those initial activities which have already taken place at both the Craig/Nellis and Eastern Beltway sites.

Specifically, concerning the Craig/Nellis site, Plaintiffs were given an asbestos abatement permit. In the course of effectuating removal of asbestos relating to a particular pipe, a pool house and clubhouse were demolished. Removal of asbestos relating to the pipe could be considered excavation of an existing building performed lawfully under the permit obtained, although the actual demolition of the clubhouse and pool house may not have been lawfully begun.

Relating to the Eastern Beltway site, a drainage ditch was removed and relocated lawfully under a dust control permit. Movement of the drainage channel might include the placing of construction materials in a permanent position and fastened in a permanent manner, although this Court has not been provided with specific facts relating to movement of the drainage channel.

As the purpose behind adoption of § 29.08.040 was to avoid undue hardship to project developers, forcing Wal–Mart to abandon its plans to build two "Supercenters" here in Clark County would in this Court's judgment constitute an undue hardship. Thus Wal–Mart is likely not required to modify plans, construction, or the designated use of the two properties under Clark County Code § 29.08.040.

## B. IRREPARABLE HARM AND THE BALANCE OF HARDSHIPS

■ Because Wal–Mart should prevail on the merits, the burden to show irreparable harm is substantially reduced. Even so, this Court finds that Wal–Mart would be irreparably harmed if a preliminary injunction was not granted. First, it is unlikely that monetary damages would be an adequate remedy since Wal–Mart would be unlikely to recover potential damages of one billion dollars from Clark County. Second, money damages would not be an adequate remedy for lost property rights "[b]ecause real property and its attributes are considered unique and loss of real property rights generally results in irreparable harm...." *Dixon v. Thatcher*, 103 Nev. 414, 742 P.2d 1029, 1030 (1987). Lastly, the Court finds that when the potential harm to Plaintiffs is compared to that of Clark County, the balance of hardships tips decidedly in favor of Plaintiffs. By issuing a preliminary injunction, the County does not incur any monetary loss or harm. If a preliminary injunction is not issued however, Wal–Mart will continue to experience construction delays increasing the costs to complete both projects.

## C. CONSTITUTIONAL CLAIMS

■ In addition to claiming that Wal–Mart has both a vested right to complete both "Supercenters" and that Clark County Code § 29.08.040 protects Wal–Mart from being required to alter either its plans or construction of the two sites, Wal–Mart also argues that Clark County Ordinance 2377 is unconstitutional on a number of grounds. Given Plaintiffs success in obtaining mandatory injunctive relief, there is a serious question whether the Court can or should address Plaintiffs' constitutional claims.

Generally, Federal courts have no power to render advisory opinions. *Aetna Life Insurance Co. v. Haworth*, 300 U.S. 227, 240, 241, 57 S.Ct. 461, 81 L.Ed. 617 (1937). A case "must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.* at 241, 57 S.Ct. 461. Because this case can be resolved solely on the basis of a vested rights claim and potentially under Clark County Code

§ 29.08.040, addressing the constitutional issues would constitute an advisory opinion.

Wal–Mart argues that this Court should address the constitutional issues raised by enforcement of Clark County Ordinance 2377 because the constitutionality of the ordinance is "capable of repetition but evading review." The Court finds, however, that the "capable of repetition but evading review" exception to the mootness doctrine is not applicable to the present case. "First, there must be a 'reasonable expectation' that the same complaining party will be subject to the same injury again. Second, the injury suffered must be of a type inherently limited in duration such that it is likely always to become moot before federal court litigation is completed." *Native Village of Noatak v. Blatchford,* 38 F.3d 1505, 1509 (9th Cir. 1994).

Although Wal–Mart claims, through the affidavit of Robert Bedard who is the Director of Real Estate for Wal–Mart, that it has plans for two additional "Supercenters" in the next 18–24 months, such plans are speculative in nature. Wal–Mart has provided no evidence that land for these additional sites has been purchased nor has Wal–Mart identified particular pieces of property for development. Thus it cannot be presently concluded that Wal–Mart has a reasonable expectation that their claimed injury will reoccur. The mere fear of future injury is not enough.

Relating to the question of whether the issue will likely become moot before the completion of future litigation, a vested rights claim relating to future development projects would fail since this Court is unaware of any other current "Supercenter" development projects whereby there might be an issue as to whether vested rights were obtained before the adoption effective dates of Clark County Ordinance 2377. Thus the constitutionality of the Ordinance could be addressed and resolved if necessary, in the context of a future and concrete case or controversy.

## V. CONCLUSION

IT IS THEREFORE ORDERED that Plaintiffs' Motion for Preliminary Injunction (Doc. # 3) is GRANTED to the extent that Clark County Ordinance 2377 shall not apply to Plaintiff Wal–Mart's proposed "Supercenters" at the Craig/Nellis and Eastern Beltway locations and that Defendant Clark County and its officials, employees or agents are hereby restrained from interfering with the regular process of building permit issuance regarding the proposed Wal–Mart "Supercenters" at the Craig/Nellis and Eastern Beltway locations or from taking any other action to prevent construction of the two "Supercenters" at issue on the basis of Ordinance 2377.

IT IS FURTHER ORDERED that Plaintiffs shall secure this Preliminary Injunction by posting a bond in the amount of $50,000.00 with the Clerk of the Court on or before December 10, 1999.

IT IS FURTHER ORDERED that the Parties shall have to and including January 12, 2000, to show cause in writing why the Court should not convert the Preliminary Injunction into a Permanent Injunction.

# APPENDIX A

## CLARK COUNTY ORDINANCE 2377

[Bracketed] and/or strikethrough material is that portion being deleted or amended
Underlined material is that portion being added

BILL NO. 9-22-99-5(A)

SUMMARY - An Ordinance to revise retail restrictions.

ORDINANCE NO. 2377

(of Clark County, Nevada)

AN ORDINANCE TO AMEND TITLE 29, CHAPTER 29.02, SECTION 29.02.030, TO REVISE THE DEFINITIONS OF GROCERY STORE AND SALES, RETAIL, TO RESTRICT THE AREA OF FOOD SALES WITHIN RETAIL ESTABLISHMENTS, AND PROVIDING FOR OTHER MATTERS PROPERLY RELATED THERETO.

SECTION 1. THE CLARK COUNTY BOARD OF COMMISSIONERS DOES HEREBY FIND AND DECLARE THE FOLLOWING:

Whereas grocery stores often serve as the major draw or "anchor" in neighborhood shopping centers;

Whereas many neighborhood and community retail and service oriented commercial businesses are established in the neighborhood shopping centers as accessories to the primary "anchor" grocery store;

Whereas large retail "super" stores may present an additional detrimental impact to existing neighborhood shopping centers by changing land use patterns causing neighborhood "anchor" grocery stores to either close or move;

Whereas the remaining businesses in neighborhood shopping centers would be adversely impacted by loss of the "anchor" store, possibly causing them to close or move as well resulting in vacant properties, a loss in property values and blight;

Whereas certain large retail super stores have additional objectionable deleterious effects upon public health and safety, particularly when such large retail establishments devote a large amount of floor space to food items which tends to generate substantial vehicular and pedestrian traffic concentrated at one or two building entrances in close proximity to each other;

Whereas the concentration of vehicular and pedestrian traffic directed toward a few entrances may cause stacking and queuing of cars on adjacent arterial thoroughfares and within the parking areas of the retail establishment itself, and may have other adverse effects on traffic circulation in general and to the general welfare and safety of patrons visiting the establishment and to pedestrians in general;

Whereas a special regulation of these uses is necessary to improve the pedestrian and traffic flow, reduce conflicts by dispersing pedestrian and vehicular traffic, preserve property values and control blight.

NOW THEREFORE, THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF CLARK, STATE OF NEVADA, DOES HEREBY ORDAIN AS FOLLOWS:

SECTION 2. Title 29, Chapter 29.02 (Definitions) , Section 29.02 030 of the Clark County Code is hereby amended to revise the following definitions to read as follows:

**Grocery store.** "Grocery store" means a business located in a building or in a portion of a building which is segregated physically or spatially from the rest of the building or other retail sales departments, which sells or displays food and other goods for[at] retail sales and has over six thousand square feet of floor space, exclusive of warehouse, restrooms, and office areas[; devoted to the display of such food]. If any business exceeds one hundred-ten thousand (110,000) square feet of retail space then no more than seven and one half (7 1/2) percent may be used for the sale or display of food. For theses purposes, "business" shall be defined not only as a single store, but also two or more stores within the same shopping center which share check stands, management, warehousing, or distribution facilities. No business over 110,000 square feet devoting more than seven and one half (7 1/2) percent to food at the time this restriction was enacted shall be required to reduce the amount of space devoted to food, but it may not expand the square footage so devoted.

**Sales, retail.** "Retail sales" means the sale of general merchandise to the general public for direct use or consumption, but not including the sale to another business for resale purposes. The retail sale of any product may be conducted in any district where retail sales are permitted unless the sale of the product or type of store is listed under a less restrictive district, or unless listed as permitted subject to a conditional use permit in said district, in a less restrictive district, or in any district. The incidental sale of food within any retail store shall not be construed to allow incidental gaming and/or smoking within the store as is permitted within grocery stores. See "grocery store" for restrictions on the area permitted for food sales.

SECTION 3    If any section of this ordinance or portion of thereof is for any reason held invalid or unconstitutional by any court of competent jurisdiction, such holding shall not invalidate the remaining parts of this ordinance.

SECTION 4.    All ordinances, parts of ordinances, chapters, sections, subsections, clauses, phrases or sentences contained in the Clark County Code in conflict herewith are hereby repealed.

SECTION 5.    This ordinance shall take effect and be in force from and after its passage and the publication thereof by title only, together with names of the County Commissioners voting for or against its passage, in a newspaper published in and having a general circulation in Clark County, Nevada, at least once a week for a period of two (2) weeks.

PROPOSED on the ___22nd___ day of ___September___, 1999

PROPOSED By : ___Erin Kenny___

PASSED on the ⁶ᵗʰ/day of ___October___, 1999

VOTE:

AYES:

Yvonne Atkinson Gates

Erin Kenny

Myrna Williams

NAYS:

Mary Kincaid

Lance Malone

ABSTAINING:

Bruce L. Woodbury

ABSENT:

Dario Herrera

BOARD OF COUNTY COMMISSIONERS
CLARK COUNTY, NEVADA

By_____
                Chairman

ATTEST:

_____
SHIRLEY B. PARRAGUIRRE, County Clerk

This ordinance shall be in force and effect from and after the __20th__ day of __October__, 1999.