THE CITY COUNCIL OF THE CITY OF RENO, STATE OF NEVADA, AND MEMBERS THEREOF CONSISTING OF PETE SFERRAZZA, RICHARD SCOTT, JANICE PINE, FLORENCE LEHNERS, JAMES THORNTON AND DAVE HOWARD, APPELLANTS, *v.* TRAVELERS HOTEL, LTD., A CALIFORNIA LIMITED PARTNERSHIP, RESPONDENT.

No. 15201

July 19, 1984                                683 P.2d 960

*Robert L. Van Wagoner,* City Attorney, Reno, for Appellants.

*Stephen C. Mollath,* Reno, for Respondent.

## OPINION

*Per Curiam:*

This is an appeal from a judgment granting respondent Travelers Hotel, Ltd. (Travelers) a peremptory writ of mandamus ordering issuance of a special use permit for the building of a hotel casino. The district court held that denial of the permit by appellant The City Council of the City of Reno (City Council) constituted an abuse of discretion and was not supported by substantial evidence. We agree, and affirm.

Travelers seeks to build a fifteen story, 305 room hotel-casino complex upon a one and one-half acre site at the corner of Villanova Drive and Airmotive Way in Reno. Although the area's C-2 zoning specifically permits gaming in hotels with more than 100 rooms, *see* Reno Municipal Code sec. 18.06.250,[1] Travelers must obtain a special use permit before building because its hotel-casino constitutes a "major project." *See* RMC sec. 18.06.050(h)(Supp. No. 2, 1982).[2]

In the spring of 1983, Travelers applied for a special use permit. The Department of Planning and Community Development reviewed the application and prepared a detailed

---

[1]RMC sec. 18.06.250 provides in pertinent part:

C-2 local commercial.

(a) *Permitted uses:* Uses permitted on a lot or parcel having the required width:

(1) Any use permitted in the C-1 zones;

(2) Specific uses, such as the following, within a building: . . . gaming in hotels with more than one hundred (100) rooms . . . ;

[2]RMC sec. 18.06.050(h) provides in pertinent part:

*Major projects categories requiring special use permits:*

(1) A "major project" means any proposed development which falls within any one or more of the following categories:

a. [T]ransient occupancy facilities (hotels, . . . etc.) containing eighty (80) units or more . . . ;

b. Any gaming facility. . . .

"Staff Report" considering the factors listed in RMC sec. 18.06.050(h).[3] Their report recommended approval of the application. On May 4, 1983, the Planning Commission held a public hearing to consider the application. *See* RMC sec. 18.06.400(a)(3). No objections from the public were presented at the hearing. The Commission recommended approval subject to conditions specified in the staff report.

On June 13, 1983, the City Council held a public hearing to review the application. Counsel for certain potential competitors of Travelers objected to the issuance of the permit. In addition, one lay witness testified as to her concern that the hotel-casino would be located too close to a high school in the vicinity. The City Council voted 4-2 to deny the application, without stating any reasons therefor.

On June 30, 1983, Travelers filed an application for writ of mandamus challenging the action of the City Council. An alternative writ of mandamus was issued that day, and a hearing on the peremptory writ was held August 12, 1983. The district court found that the City Council's denial of the special use permit "was an abuse of discretion and not supported by substantial evidence." It entered judgment for Travelers, and ordered the City Council "to issue to [Travelers] a Special Use Permit . . . subject to the conditions set forth in the Staff Report. . . ."

The record supports the findings of the trial court. The staff report addressing specific areas of concern was before the City Council, and recommended approval. The minutes of the hear-

---

[3]*RMC sec. 18.06.050(h) further provides in pertinent part:*

(2) All proposed major projects shall require the issuance of a special use permit, following review by the regional planning commission. Major projects requiring additional title 18 action by the regional planning commission (with the exception of zone change applications and requests for variance) shall be consolidated into one public hearing.

(3) The regional planning commission shall consider the following factors, among others, in making the findings required by section 18.06.400(a)(1) a. and b.

a. Availability of, and the impact of the proposed development on housing and public services including, without limitation, schools, police and fire protection, transportation (including traffic and parking), employment sewage collection and treatment facilities, recreation and parks, noise, air quality and the quality and quantity of water;

b. Conformance with the adopted master plan;

c. Special consideration will be given to proposed developments which will provide low income affordable housing.

ing reveal that, with one minor exception,[4] the only other evidence presented consisted of statements by interested parties or their counsel, and the opinions of council members. Such statements and opinions alone do not justify denial of a special use permit. This Court has held that the "substantial evidence" requirement supporting such a decision is not met by statements of counsel for interested parties, Henderson v. Henderson Auto, 77 Nev. 118, 359 P.2d 743 (1961), or opinions of council members, unsupported by proof. State ex rel. Johns v. Gragson, 89 Nev. 478, 515 P.2d 65 (1973).

As this Court stated in Henderson v. Henderson, *supra:*

> Respondent, as plaintiff before the trial court, was required to establish abuse of discretion on the part of the city council in the denial by that body of respondent's application for a use permit. Such showing of an abuse of the discretion vested in the council was established before the trial court by respondent's showing of a lack of substantial evidence before the council, which served as a basis for its action in denying respondent's application. Concededly, the action taken by the city council in its administrative capacity, upon the matter properly before it, would not warrant interference by the trial court except where there was a manifest abuse of discretion. Here, however, where there was no evidence to support the council's actions, the trial court's action [issuing a peremptory writ of mandate] was proper. [Citations omitted.] The exercise of discretion by the city council as an administrative board [sic] could not be sustained in court on the basis of conclusions reached by the city council in the absence of circumstances which reasonably justified such conclusions. [Citation omitted.]

*Id.* at 122, 359 P.2d at 745, as quoted in State ex rel. Johns v. Gragson, 89 Nev. at 482, 515 P.2d at 68.

Like the district court, we are limited to the record made before the City Council in our review of the council's decision. State ex rel. Johns v. Gragson, 89 Nev. at 482, 515 P.2d at 68;

---

[4]The City Council's argument that the lay witness' remarks concerning the location of the hotel-casino near a high school constituted a basis for its decision is considerably weakened by the council's approval, since the decision below, of two hotel-casino operations that are the same distance from the school. *See also* Zajac v. Zoning Hearing Bd. of Mifflin Tp., 398 A.2d 244, 247 (Pa. Commw. 1979) ("lay objections, to be substantial, must have some specificity.").

McKenzie v. Shelly, 77 Nev. 237, 362 P.2d 268 (1961). In the instant case the City Council gave no reasons for its decision, and there is no substantial evidence in the record to support the denial of Travelers' special use permit.

We affirm the judgment.