CITY OF LAS VEGAS, NEVADA; AND JAN LAVERTY JONES, FRANK HAWKINS, JR., ARNIE ADAMSEN, KEN BRASS AND SCOTT HIGGINSON, ALL IN THEIR CAPACITY AS MEMBERS OF THE CITY COUNCIL OF LAS VEGAS, NEVADA, APPELLANTS, v. DONALD J. LAUGHLIN, RESPONDENT.

No. 25727

April 27, 1995 893 P.2d 383

*Bradford R. Jerbic,* City Attorney, and *Val Steed,* Chief Civil Deputy, Las Vegas, for Appellants.

*Moran & Weinstock,* Las Vegas, for Respondent.

## OPINION

*Per Curiam:*

### FACTS

Appellants, as members of the City Council of Las Vegas, Nevada ("the City"), challenge the propriety of the district court's order granting a petition for a writ of mandamus ordering the City to issue a special use permit to respondent Donald J. Laughlin ("Laughlin"). The City argues that its decision to deny Laughlin's request for a special use permit was supported by substantial evidence. We agree and reverse the order of the district court.

### DISCUSSION

Like the district court, this court is limited to the record made before the City in reviewing the City's decision. *See* State ex. rel. Johns v. Gragson, 89 Nev. 478, 482, 515 P.2d 65, 68 (1973). The grant or denial of a request for a special use permit is a discretionary act. City Council, Reno v. Travelers Hotel, 100 Nev. 436, 439, 683 P.2d 960, 961-62 (1984). If this discretionary act is supported by substantial evidence, there is no abuse of discretion. *Id.* Substantial evidence is that which "'a reasonable mind might accept as adequate to support a conclusion.'" State, Emp. Security v. Hilton Hotels, 102 Nev. 606, 608, 729 P.2d 497, 498 (1986) (quoting Richardson v. Perales, 402 U.S. 389 (1971)).

Although evidence was presented at the council meeting in favor of granting Laughlin's request for a special use permit, we conclude that substantial evidence justified the City's decision to deny Laughlin's request for the permit. At the council meeting, representatives from large groups of residents[1] expressed their opposition to Laughlin's development. This opposition was augmented by several letters and a petition containing 176 signatures. Concern was expressed that (1) children would have easier access to alcohol; (2) vagrancy would be caused by the convenience store; (3) crime would increase; (4) gasoline would be placed within a thousand feet of the municipal wellhead; (5) traffic would increase; (6) the increased traffic would cause a

---

[1]One such group was a homeowners association that included owners of eighty-nine homes.

hazard for children who use the area to travel to the local elementary, middle, and junior high schools; (7) the convenience store would be within close proximity to the junior high school; and (8) the nature of the area would be ruined because the area was basically non-commercial.

Laughlin argued that most of these concerns were unfounded because a location, less than half a mile away, was approved for a "very similar use." The City, however, pointed out that the location referred to by Laughlin's attorney was much larger and was close to the freeway interchange. Therefore, it presumably did not increase traffic through the neighborhood.

Laughlin also argued that the area in the case at bar was zoned C-1 for commercial use and therefore should be developed commercially. The City pointed out that not every C-1 area is appropriate for the sale of beer and wine; therefore, decisions whether to issue special use permits are made on a case-by-case basis. The City also noted occasions where C-1 areas were denied special use permits for the sale of beer and wine.

Finally, Laughlin argued that the district court was correct in determining that "mere reliance on public pressure such as in the instant case does not meet the 'substantial evidence' requirement for review as adopted by the Nevada Supreme Court." Although the City did express that its job would be easier if Laughlin could come up with "something that is acceptable to the residents," there was no indication that it was not the actual concerns expressed by the public that persuaded the City to deny Laughlin's request for a special use permit.

In addition, the City's reliance on public testimony is not dispositive of the fact that the City abused its discretion. Although testimony from a few individuals that an area is overwhelmingly residential may not be enough to deny a request for a special use permit, *see* Tighe v. Von Goerken, 108 Nev. 440, 444, 833 P.2d 1135, 1137 (1992), the testimony here reflected the opinion of over 200 individuals. Therefore, because we conclude that the lay objections were substantial and specific, the case at bar may be distinguished from *Travelers Hotel,* 100 Nev. at 439, 683 P.2d at 961, in which this court found that one lay opinion that a proposed casino was too close to a high school was an insufficient ground for denial of a request for a special use permit. *See* Clark Co. Liquor & Gaming v. Simon & Tucker, 106 Nev. 96, 98, 787 P.2d 782, 783 (1990) (using the same reasoning to distinguish *Travelers Hotel*).

We conclude that the concerns expressed by the public, specifically those over increased traffic where children walk to school

and preserving the residential nature of the neighborhood, establish a valid basis for the denial of Laughlin's request for a special use permit. *See Tighe,* 108 Nev. at 443, 833 P.2d at 1137; *Clark Co. Liquor & Gaming,* 106 Nev. at 98, 787 P.2d at 783. Accordingly, we conclude that the City's decision was based on substantial evidence and the City did not manifestly abuse its discretion by denying Laughlin's request for a special use permit. We, therefore, reverse the district court's order granting the petition for a writ of mandamus and reinstate the City's denial of Laughlin's request for a special use permit.