THE CITY OF RENO, Appellant, v. RICHARD HARRIS
AND NEWLANDS NEIGHBORHOOD ASSOCIATION,
INC., Respondents.

No. 23679

May 25, 1995                                      895 P.2d 663

*Patricia A. Lynch,* City Attorney, and *Madelyn Shipman,* Chief
Deputy City Attorney, Reno, for Appellant.

*Prezant, Mollath & Costello,* Reno, for Respondent Richard
Harris.

*Sinai & Schroeder,* Reno, for Respondent Newlands Neighbor-
hood Association, Inc.

## OPINION

*Per Curiam:*

The property involved in this dispute (Hawkins House) is located in a residential area and was operated as a museum for several years by virtue of a special use permit granted in accordance with a zoning amendment designating the property a historic landmark in 1978. In 1992, an application was made by Don and Melinda Gustin (the Gustins), to amend the use permit to allow for limited office use. The City of Reno Board of Adjustment (the Board) recommended against approval; the Reno City Council (Reno Council) reversed the recommendation and approved the application for the special use permit.

This is an appeal from an order granting respondent Richard Harris (Harris) and intervenor Newlands Neighborhood Association (NNA) (collectively respondents) a peremptory writ of mandamus overturning the granting of the special use permit by the

Reno Council. Respondents contended professional office use is not allowed under the Newlands Neighborhood Master Plan (NN Plan) which they assert is master-planned multi-family residential. The district court agreed with respondents and held that the issuance of the special use permit was not in conformance with the City of Reno's master plan and was thus unlawful and void. The City of Reno (Reno) appeals the district court order.

## FACTS

On November 27, 1978, the Reno Council unanimously approved a special use permit that allowed Robert Hawkins (Hawkins) to operate a public art museum at 549 Court Street (Hawkins House) in an existing single-family dwelling. The property was zoned "R-1" and "R-1a" (single family residential) which permitted the property to be used as a museum through a special use permit processed in accordance with a zoning amendment designating the property as "HL" (historic or landmark overlay district).[1] The property is presently zoned SFR-6/HL (single family residential-6,000 square foot minimum with historical or landmark overlay district).

Hawkins subsequently conveyed Hawkins House to Nevada Art Gallery, Inc., which operated the Sierra Nevada Museum of Art (museum) until December of 1989. The operators of the museum later abandoned their use of the property, which was never again used as a museum. In June of 1990, the museum conveyed Hawkins House to Earl Smith (Smith). The property has remained vacant since Smith purchased the property.

The Gustins subsequently acquired an option to purchase the property. In March of 1992, the Gustins filed an application with the Board for an amendment to the special use permit to allow conversion of the property from the permitted museum use to limited office use. The Gustins' application for the approximately 7,000 square foot property proposed a mixed use consisting of Mr. Gustin's advertising agency, Mrs. Gustin's franchise muffin business, and rental to another party of 1,000 to 1,500 square feet. Gustin's representative stated that Gustin intended to preserve the existing structure, replace the kitchen, and plant mature trees along the west property line. He asserted that the proposed

---

[1]The HL zoning district allows as permitted uses:

Any use permitted in the underlying zone and any use other than those permitted in the underlying zone which is not detrimental to the neighborhood and would contribute to the protection and preservation of the historical, architectural, cultural, or landmark value of the structure, site or district.

RMC § 18.06.290. The requirements for the granting of a special use permit are set forth in RMC § 18.06.400.

limited office use was less intense than the previously approved museum use. To support his conclusion, he said that the limited office use would generate less than 120 trips per day to the property, compared to the estimated 250 trips generated by the museum use. He also stated that the area east of the property is no longer residential and that office use dominates this area.

The chairperson of the State Historical Preservation and Archeology Advisory Board indicated that the building will be in jeopardy if allowed to remain vacant, and restoration to a single-family residential home was cost prohibitive. The chairperson operated the museum at the Hawkins House for nine years and supported the proposition that the proposed usage would generate much lower traffic count than did the museum.

A representative of the NNA objected to the project and cited what he believed would be increased traffic. Others testified the NN Plan, which permitted multi-family and office use, was to be a buffer to keep office use from encroaching on the single-family use. The NN Plan had been adopted by the Reno Council in 1988 and encompassed an area in northeast Reno west of Arlington Avenue and south of the Truckee River. On May 13, 1992, the Gustin's application was denied by the Board.

Gustin appealed, and a hearing was held before the Reno Council. At the public hearing, 220 individuals opposed the granting of the special use permit and twenty-four were in favor. A City of Reno associate planner testified that he had thoroughly analyzed the application and recommended approval of the permit subject to certain conditions. He noted that the property was located in the historic overlay zone which allows use other than single-family residential in order to preserve historic buildings. He further concluded that the proposed use was consistent with the NN Plan, and the office portion of the mixed Land Use/ Transportation Guide and the Reno policy plan also permitted such use. The Reno Council reversed the Board's denial by a 4-3 vote and approved the amendment to the special use permit.

On June 18, 1992, respondent Harris, the owner of the property located at One Elm Court, adjacent to Hawkins House, filed an "Application for Writ of Mandamus, Petition for Review (NRS 278.0235) or in the Alternative, Complaint for Declaratory Relief" (petition) in the district court. The petition alleged, inter alia, that: (1) the subject property was not master-planned under the NN Plan to allow for office use; (2) approval of the office use for the property was not in conformance with the master plan ordinance of the City of Reno; and (3) Reno's approval of the amendment was arbitrary and capricious and not supported by substantial evidence. On June 23, 1992, an order was entered directing an alternative writ of mandamus be issued, command-

ing the City of Reno to rescind and cancel the special use permit or show cause why it had not done so. A "show cause" date was set by agreement of the parties for July 17, 1992. NNA filed a motion for joinder which was stipulated to by the City of Reno and Harris.

After hearing arguments of counsel, the district judge inspected the subject property and the surrounding neighborhood without notice to either party. On August 26, 1992, the district court entered an order voiding the amendment to the special use permit and declaring that the City of Reno's approval of the amendment was unlawful. The City of Reno appeals from that order.

## Whether the City of Reno is an Aggrieved Party

Harris filed a motion to dismiss with this court on the ground that the City of Reno is not an "aggrieved party" and thus has no statutory standing to appeal the decision of the district court.

Rule 3A(a) of the Nevada Rules of Appellate Procedure provides, in pertinent part:

> (a) **Aggrieved Party May Appeal**. Any appealable judgment or order in a civil action or proceeding may be appealed from and reviewed as prescribed by these rules, and not otherwise. Any party aggrieved may appeal . . . and the Supreme Court may consider errors of law and the sufficiency of the evidence . . . .

An appeal from a district court decision entered upon judicial review of an agency decision is governed by NRS 233B.150, which provides: "An aggrieved party may obtain a review of any final judgment of the district court by appeal to the supreme court. The appeal shall be taken as in other civil cases." Although this court has not specifically addressed this issue, we have previously allowed the Reno Council to appeal such a determination. See City Council, Reno v. Travelers Hotel, 100 Nev. 436, 683 P.2d 960 (1984). This court has defined an aggrieved party as one whose "personal right or right of property is adversely and substantially affected." Estate of Hughes v. First Nat'l Bank, 96 Nev. 178, 180, 605 P.2d 1149, 1150 (1980); see also Eikelberger v. Nev. St. Bd. of Accountancy, 91 Nev. 98, 531 P.2d 853 (1975).

Most courts considering the issue have held a municipality may be an aggrieved person within the meaning of statutes authorizing such a person to institute proceedings to review a decision of a board of adjustment. See Burley v. McCaslin Lumber Co., 693 P.2d 1108 (Id. Ct. App. 1984); Crosby v. Belgrade, 562 A.2d

1228 (Me. 1989); Randolph Vine Assoc. v. Zoning Bd. of Adjustment, 573 A.2d 255 (Pa. Commw. Ct. 1990). We agree with this authority and believe a municipality has a vested interest in requiring compliance with its land use decisions. Accordingly, the City of Reno was an aggrieved party and had standing to challenge the district court order.

## Standard of Review

When a district court has reviewed a zoning decision without taking additional evidence and the decision is appealed to this court, the scope of review is usually limited to a determination of whether the agency or municipality which made the decision appealed from committed an abuse of discretion. *See* Nevada Contractors v. Washoe County, 106 Nev. 310, 313-14, 792 P.2d 31, 33 (1990). Review by this court is based upon the record made before the commission or council, City Council, Reno v. Travelers Hotel, 100 Nev. 436, 439, 683 P.2d 960, 962 (1984), and the grant or denial of a special use permit will not be disturbed absent an abuse of discretion.

No presumption of validity attaches to the decision of a district court that does not hear additional evidence in reviewing a zoning decision made by a municipality. *See* Mack v. Municipal Officers of Cape Elizabeth, 463 A.2d 717 (Me. 1983). However, where the district court takes additional evidence, the scope of review is limited to a determination of whether the district court committed an abuse of discretion or made an error of law. *See* Brock v. Dickinson County Bd. of Adjustment, 287 N.W.2d 566 (Iowa 1980); Rowe v. North Hampton, 553 A.2d 1331 (N.H. 1989); Baker v. Commonwealth, 581 A.2d 1019 (Pa. Commw. Ct. 1988); Overstreet v. Zoning Hearing Bd., 412 A.2d 169 (Pa. Commw. Ct. 1980).

The question presented is whether the inspection of the neighborhood by the district court judge should be viewed as the equivalent of hearing additional evidence. We conclude that it is not. Clearly, the Reno Council was aware of the neighborhood at issue, and the district court judge did nothing more than acquaint himself with the area under examination. Moreover, we also believe that the district court's inspection of the area played no part in its decision as we subsequently conclude. Therefore, our standard of review in this case will remain the same as in those cases where no additional evidence has been taken by the district court in reviewing a zoning decision.

### Inspection of Property by the District Court Judge

The district judge inspected the subject property without notice to the parties and after having heard the arguments of counsel. In reviewing the court's findings, the only statement that resulted from the inspection was the judge's observation that the property was immediately adjacent to an area designated for single-family use and that a casual observer would conclude that the property was part of the single-family use area. However, the district judge correctly found that the Hawkins House was within the NN Plan and then went on to determine whether the Plan permitted the variance granted.

A court's consideration of matters outside the record, obtained by independent investigation, generally constitutes error. *See, e.g.*, Westergard v. Barnes, 105 Nev. 830, 784 P.2d 944 (1989); People v. Hummert, 270 N.E.2d 496 (Ill. App. Ct. 1971); People v. Wallenberg, 181 N.E.2d 143 (Ill. App. Ct. 1962). Although we do not encourage judges to make independent inspections of real property in question without notice to the parties, the court's decision in this case was based on a review and interpretation of the NN Plan and the independent inspection does not seem to have impacted his analysis in any way. Therefore, we conclude that any error that might have occurred in inspecting the property in this case was harmless.

### The District Court Decision Granting a Writ of Mandamus

The initial master plan permitted single and multi-family residences in the area in question. However, in 1988, the City of Reno adopted the NN Plan for a portion of southeast Reno which boundaries included the Hawkins House. The Plan resulted from City of Reno officials meeting with residents in the area to hear their concerns and adopt a land use plan specifically addressing them. The major concern of the residents was that multi-family or professional office use was creeping into those areas that had been traditionally single-family residential. To address those fears, transition areas were recognized in which multiple use was permitted, i.e. single-family, multi-family, community commercial and office, and other areas were designated strictly single-family residential. The attorney for the NNA acknowledged before the Reno Council that the use of properties located in the transition area under the NN Plan was to be considered on a case-by-case basis.

> So at that particular time, we batted it around, and we eventually resolved that we would draw the line [of the "transition" area] as to where commercial could go up to.

As to any property to the east of it, we would take those on an individual and case-by-case basis.

Most of the uses of property in the transition area in question at the time of this hearing was for professional offices, with multi-family residences being the second.

When the NN Plan was adopted by the Reno Council in 1988, it became an amendment to the master plan. Reno's Land Use/ Transportation Guide was also amended to show the transition area as permitting mixed use, and mixed use was defined as office use, multi-residential use, and single family residential. There is no dispute that the Hawkins House is within the transition area, and the district court recognized that the transition designation permitted a mixture of uses.

In Nevada Contractors v. Washoe County, 106 Nev. 310, 792 P.2d 31 (1990), we unequivocally held that the granting or denial of a use permit is generally within the prerogative of local governments:

> Finally, we note it is not the business of courts to decide zoning issues. Because of the Board's particular expertise in zoning, courts must defer to and not interfere with the Board's discretion if this discretion is not abused. Here, the Board acted within its discretionary powers; we cannot intrude on the Board's legitimate exercise of that power.

*Id.* at 314, 792 P.2d at 33 (citations omitted).

Once it is established that an area permits several uses, it is within the discretion and good judgment of the municipality to determine what specific use should be permitted. While acknowledging that the transition area permitted the use applied for by Gustin, the district court then held that the NN Plan was ambiguous as to whether such use at the Hawkins House would violate the general language of the plan which states that the area was to provide a buffer for the single-family area. The district court then strictly construed the NN Plan against the City of Reno and granted respondents the requested relief. The City of Reno asserts that the district court failed to give its decision proper deference, and we agree.

The decision as to specific uses within the transition zone was for the Reno Council to make and should only be disturbed if not supported by substantial evidence. *See* Nova Horizon v. City Council, Reno, 105 Nev. 92, 95-96, 769 P.2d 721, 723 (1989). The Reno Council's decision permitted a use not dissimilar to the prior museum use, and credible testimony supported the conten-

tion that there would be less traffic generated by the proposed use. Expert testimony was also elicited that the use requested was permitted by the zoning regulations and was compatible with the area. The first structure east of the Hawkins House is a large condominium complex. The City of Reno's planning department supported the use change.

There was also some question whether the Hawkins House would be preserved in its present condition as a historical landmark if the new use was not permitted. The Hawkins House was designated a historical landmark in accordance with the historic or landmark overlay district by the City of Reno in 1978, and this designation permitted any use not detrimental to the neighborhood that would contribute to the preservation of the landmark structure. RMC § 18.06.290. This designation of the structure gave the Reno Council additional authority to determine whether the Hawkins House should be granted the amended use permit.

We conclude that the Reno Council had the authority to designate what uses should be made of property within the transition area, and that its decision is supported by substantial evidence. Accordingly, the district court erred in granting the writ of mandamus.

## CONCLUSION

The City of Reno has a vested interest in supporting its zoning decisions and is an aggrieved party that has the right to challenge the writ of mandate issued by the district court.

The NN Plan amended the master plan and the Land Use/ Transportation Guide by recognizing a transition area in which the Hawkins House was located. The transition area provided for multiple use, and substantial evidence supports the Reno Council's decision to permit the requested limited office use. The historical landmark designation provided additional authority to the Reno Council to permit the new use. The remaining contentions of the parties are either without merit or unnecessary to address.

Accordingly, we hereby reverse the order of the district court and affirm the decision of the Reno Council granting the amendment to the special use permit.[2]

---

[2]THE HONORABLE CHARLES E. SPRINGER, Justice, voluntarily recused himself from participation in the decision of this appeal.