STRATOSPHERE GAMING CORPORATION, DBA STRATO-
SPHERE RESORT & CASINO, A NEVADA CORPORATION,
APPELLANT, *v.* CITY OF LAS VEGAS; AND ALARMCO,
INC., RESPONDENTS.

No. 40788

September 3, 2004                                    96 P.3d 756

*Moran & Associates* and *John T. Moran III* and *John T. Moran
Jr.,* Las Vegas, for Appellant.

*Bradford R. Jerbic,* City Attorney, and *William P. Henry,* Senior
Litigation Counsel, Las Vegas, for Respondent City of Las Vegas.

*McDonald Carano Wilson LLP* and *Jeffrey A. Silvestri,* Las
Vegas; *JoNell Thomas,* Las Vegas, for Respondent Alarmco.

Before SHEARING, C. J., ROSE and MAUPIN, JJ.

## OPINION

*Per Curiam:*

This appeal challenges the Las Vegas City Council's denial of appellant Stratosphere Resort & Casino's site development plan application to develop a thrill ride. The Stratosphere petitioned the district court for a writ of mandamus and filed a complaint for declaratory relief. The district court denied the petition and dismissed the complaint. We affirm the district court's order.

### FACTS

Appellant Stratosphere Resort & Casino (the Stratosphere) applied to the City of Las Vegas (City) for a site development plan review to construct a proposed ride located at 2000 and 2035 Las Vegas Boulevard South in Las Vegas, Nevada. The Stratosphere filed its application pursuant to section 19.18.050 of the Las Vegas Municipal Code.[1] The proposed roller-coaster-type ride consisted of a steel structure rising 510 feet on the east side of the Stratosphere tower. A passenger car would ascend the 510 feet and then free-fall 204 feet, reaching a maximum speed of 93 miles per hour. The passenger car would then ascend a 325-foot tower that would be built on the Stratosphere's property across from the Stratosphere tower.[2]

The City Planning and Development Department concluded that the ride would be located in a permitted C-2 (General Commercial) zoning district and that it would not disturb local traffic patterns. It recommended approval of the proposed ride subject to certain conditions.

The Las Vegas Planning Commission held a public meeting on the application for the proposed ride. Before the public hearing on the application, the Commission received 670 protests against the

---

[1]Section 19.18.050 mandates that a property owner seeking approval of a proposed commercial development plan must file a site development plan with the City's Planning and Development Department.

[2]The Stratosphere originally applied to the City to build a thrill ride that was much larger and faster. This opinion will address the modified ride.

proposed ride and 78 approvals for the ride. At the public hearing, 95 individuals appeared in support of the proposed ride and 78 individuals opposed the ride. Approximately 20 individuals, including nearby residents and business owners, spoke in opposition to the proposed ride, objecting to the ride's proximity to the residential neighborhoods and the increased traffic and noise level it would generate. The Stratosphere introduced four experts at the public hearing to rebut the opposition's concerns. The Planning Commission failed to approve the application for the proposed ride by a 2-2 vote.

The Las Vegas City Council (City Council) then considered the application for the Stratosphere's proposed ride. Before the City Council's public hearing, the City Council received 175 protests against the proposal and 671 approvals for the proposal. During the public hearing, approximately 20 individuals spoke in opposition to the proposed ride. The opponents addressed the same concerns that were mentioned during the Planning Commission's public hearing. The City Council unanimously denied the Stratosphere's application for the proposed ride by a 6-0 vote, with one abstention. Before Mayor Oscar Goodman voted, he made the following statement:

> [M]y vision as the Mayor of the City of Las Vegas is to have a revitalized downtown. And I am convinced that in order to do that, one of the most important elements is to have people move back into a neighborhood which is maturing and decaying and to revitalize that neighborhood . . . .
>
> . . . .
>
> [I]f those folks in the neighborhood feel that this particular project is such that it will destroy their quality of life as they perceive it, then I have to feel that I must support the neighbors against the Stratosphere as far as these issues are concerned.

The Stratosphere then filed a petition for a writ of mandamus and complaint for declaratory relief in the district court. Respondent Alarmco intervened in the proceedings. After a hearing, the district court denied the petition, dismissed the complaint and entered an order, concluding that the City Council's review of a site development plan pursuant to section 19.18.050 is a discretionary act and that the Stratosphere did not have a vested right to build the proposed ride. The district court also concluded that substantial evidence supported the City Council's 6-0 vote at the public hearing and that the City Council properly considered section 19.18.050 in reaching its decision.

The Stratosphere appeals, contending that the district court erred in denying its petition and dismissing its complaint because the

City Council's authority to review a site development plan application involves a nondiscretionary act and that the Stratosphere has a vested right to build the proposed ride. According to the Stratosphere, even if the City Council has discretion to review a site development plan, the City Council abused its discretion because its decision is not supported by substantial evidence.

## DISCUSSION

The Stratosphere asserts that under section 19.18.050 of the Las Vegas Municipal Code, the City Council's review of a site development plan is a nondiscretionary act, and therefore, it has a vested right to build the ride because the ride is permitted within existing zoning. The Stratosphere contends that the City Council's review of the proposed ride is only of an ''aesthetic nature'' because the Stratosphere does not seek any special consideration, such as a zoning change, special use permit, conditional use permit, or a variance.

The City Council's review of a site development plan is governed by section 19.18.050(A), which states that the purpose of the review process is to ensure that the development plan:

> (1)  Is consistent with the General Plan, this Title, the Design Standards Manual, the Landscape, Wall and Buffer Standards and other regulations, plans and policies of the City;
> (2)  Contributes to the long term attractiveness of the City;
> (3)  Contributes to the economic vitality of the community by ensuring compatibility of development throughout the community; and
> (4)  Contributes to the public safety, health and general welfare.

Moreover, section 19.18.050(E) states the criteria for the site development plan review and provides that the review is intended to ensure that:

> (1)  The proposed development is compatible with adjacent development and development in the area;
> (2)  The proposed development is consistent with the General Plan, this Title, the Design Standards Manual, the Landscape, Wall and Buffer Standards, and other duly-adopted City plans, policies and standards;
> (3)  Site access and circulation do not negatively impact adjacent roadways or neighborhood traffic;
> (4)  Building and landscape materials are appropriate for the area and for the City;

(5) Building elevations, design characteristics and other architectural and aesthetic features are not unsightly, undesirable or obnoxious in appearance; create an orderly and aesthetically pleasing environment; and are harmonious and compatible with development in the area;

(6) Appropriate measures are taken to secure and protect the public health, safety and general welfare.

In the context of governmental immunity, we have defined a "discretionary act" as "an act that requires a decision requiring personal deliberation and judgment."[3] The language used in section 19.18.050 clearly indicates a discretionary act on the part of the City Council. The ordinance uses numerous terms that require the City Council to exercise personal deliberation and judgment. For example, the City Council must ensure that the development "contributes" to the City's long-term attractiveness and to public safety, health and general welfare, is "compatible" with development in the area, and is not "unsightly, undesirable or obnoxious in appearance."

In *Board of County Commissioners v. CMC of Nevada*,[4] this court rejected an argument similar to the Stratosphere's in a situation involving the issuance of a building permit. The applicant argued that the Commission is confined to a review of aesthetics and has no other discretion under a county ordinance.[5] This court stated: "In our view, the Ordinance was not enacted to merely provide perfunctory review and endorsement of plans previously submitted in support of a conditional use permit request."[6]

The Stratosphere also asserts that it has a vested right to build the proposed ride because the City Council previously approved the Stratosphere's application to build another ride on the same property and because the ride is permitted within existing zoning. We have held that "[i]n order for rights in a proposed development project to vest, zoning or use approvals must not be subject to further governmental discretionary action affecting project commencement, and the developer must prove considerable reliance on the approvals granted."[7] We have also held that "[o]nce it is established that an area permits several uses, it is within the discretion

[3]*University of Nevada, Reno v. Stacey,* 116 Nev. 428, 434, 997 P.2d 812, 816 (2000).

[4]99 Nev. 739, 743, 670 P.2d 102, 104-05 (1983).

[5]*Id.* at 742-43, 670 P.2d at 104.

[6]*Id.* at 743, 670 P.2d at 104.

[7]*American West Dev. v. City of Henderson,* 111 Nev. 804, 807, 898 P.2d 110, 112 (1995).

and good judgment of the municipality to determine what specific use should be permitted."[8]

Under section 19.18.050, the City Council must approve the Stratosphere's proposed development of the property through the City's site development plan review process. That process requires the Council to consider a number of factors and to exercise its discretion in reaching a decision. There is no evidence that the Stratosphere had a vested right to construct the proposed ride.

## Substantial evidence

The Stratosphere asserts that if the City Council's review is a discretionary act, the City Council exercised its discretion in an arbitrary and capricious manner because its decision is not supported by substantial evidence. Specifically, the Stratosphere argues that the City Council based its decision solely on public opposition to the proposed ride and that public opposition alone is not substantial evidence. The Stratosphere also argues that it presented substantial expert evidence to rebut the opposition's concerns. The Stratosphere contends, therefore, that the district court abused its discretion by denying the petition for a writ of mandamus. We disagree.

"When a district court has reviewed a zoning decision without taking additional evidence and the decision is appealed to this court, the scope of review is usually limited to a determination of whether the agency or municipality which made the decision appealed from committed an abuse of discretion."[9] "A decision that lacks support in the form of substantial evidence is arbitrary or capricious" and, therefore, an abuse of discretion.[10] We have defined "substantial evidence" as "that which ' "a reasonable mind might accept as adequate to support a conclusion." ' "[11]

Section 19.18.050(E)(5) provides that the site development plan review process is intended to ensure that the proposed development

---

[8]*City of Reno v. Harris,* 111 Nev. 672, 679, 895 P.2d 663, 667 (1995); *see also Wesley Inv. Co. v. County of Alameda,* 198 Cal. Rptr. 872, 873 (Ct. App. 1984) (concluding that property owner did not have absolute right to build retail store on property even though zoning ordinances permitted such use of the property because local ordinances mandated site development review).

[9]*Harris,* 111 Nev. at 677, 895 P.2d at 666.

[10]*Tighe v. Las Vegas Metro. Police Dep't,* 110 Nev. 632, 634, 877 P.2d 1032, 1034 (1994); *see also* NRS 233B.135(3).

[11]*State, Emp. Security v. Hilton Hotels,* 102 Nev. 606, 608, 729 P.2d 497, 498 (1986) (quoting *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Edison Co. v. Labor Board,* 305 U.S. 197, 229 (1938))).

is "harmonious and compatible with development in the area" and that it is not "unsightly, undesirable, or obnoxious in appearance." The language of this ordinance clearly invites public opinion.

We have previously recognized that "[t]he United States Constitution simply does not forbid democratic government[s] to succumb to individual and public pressures in reaching land use decisions that work to the detriment of an individual litigant."[12] Thus, we have recognized that a local government may weigh public opinion in making a land-use decision. Moreover, in *City of Las Vegas v. Laughlin,*[13] we explained that "substantial and specific" public opposition could constitute substantial evidence to support a local government's decision to deny a request for a special use permit. In *Laughlin,* "over 200 individuals"[14] opposed the respondent's application for a special use permit for a convenience store to be built on land properly zoned for commercial use but near a residential neighborhood.[15] We concluded that the public's "substantial and specific" concerns, "specifically those over increased traffic where children walk to school and preserving the residential nature of the neighborhood, establish a valid basis for the denial of [the respondent's] request for a special use permit."[16] In contrast, in *City Council, Reno v. Travelers Hotel,*[17] we concluded that a single lay opinion from a neighborhood resident that a proposed casino was too close to a school presented insufficient grounds for a city council to deny a property owner's request for a special use permit. In *Travelers,* there was also a substantial body of evidence supporting the application.[18]

In this case, the City Council received 175 written protests before the City Council's public hearing, and approximately 20 individuals testified against the proposed ride during the City Council's public hearing. The opposition primarily consisted of nearby neighborhood residents and business owners. The opposition's main concerns included: (1) the compatibility of the proposed ride located near the residential neighborhood, (2) the increased neighborhood traffic and resulting safety concerns, and (3) the possibil-

---

[12]*Boulder City v. Cinnamon Hills Assocs.,* 110 Nev. 238, 249, 871 P.2d 320, 327 (1994) (citing *Greenbriar, LTD. v. City of Alabaster,* 881 F.2d 1570, 1579 (11th Cir. 1989)).

[13]111 Nev. 557, 559, 893 P.2d 383, 385 (1995).

[14]*Id.* This number reflects a petition containing 176 signatures, letter writers, speakers at the hearing, and represented homeowners. *Id.* at 558, 893 P.2d at 384.

[15]*Id.* at 558-59, 893 P.2d at 384.

[16]*Id.* at 559-60, 893 P.2d at 385.

[17]100 Nev. 436, 438-39, 683 P.2d 960, 961-62 (1984).

[18]*Id.* at 438, 683 P.2d at 961.

ity of increased noise and ground vibration caused by the proposed ride. Although the Stratosphere presented evidence to rebut the opposition's concerns and testimony from individuals who supported the proposed ride,[19] we cannot substitute our judgment for that of the City Council as to the weight of the evidence.[20] We conclude that the kind of concerns expressed by the individuals and businesses opposed to the proposed ride are substantial and specific. Those concerns implicate the criteria that the City Council must consider under section 19.18.050 and establish a valid basis for the City Council's decision to reject the Stratosphere's site development plan. Therefore, we conclude that the district court did not abuse its discretion in denying the Stratosphere's petition and dismissing its complaint for declaratory relief.

## CONCLUSION

Having concluded that the Stratosphere's contentions lack merit, we affirm the order of the district court.

---

[19]We note that the Stratosphere's evidence adduced at the Planning Commission's public hearing did not clearly rebut all of the concerns expressed by the public opposition. For example, the expert report on traffic conditions on Las Vegas Boulevard addressed the thoroughfare's ability to handle the load of increased traffic. The report did not address the concern that the proposed ride would increase traffic delays, leading to increased use of alternate routes through the surrounding residential neighborhoods. Additionally, we note that the record indicates that many of the individuals who spoke in favor of the proposed ride at both the Planning Commission's public hearing and the City Council's public hearing were Stratosphere employees and many of them did not live in the affected residential neighborhoods.

[20]See *Clark Co. Liquor & Gaming v. Simon & Tucker,* 106 Nev. 96, 98, 787 P.2d 782, 783 (1990) (existence of conflicting evidence did not compel interference with a Clark County Liquor and Gaming Licensing Board decision so long as the decision was supported by substantial evidence).